L. C. WILLIAMS OIL CO., Plaintiff v. NAFCO CAPITAL CORP., Defendant

No. COA97-28

(Filed 21 July 1998)

**Venue— forum selection clause—non-consumer loan**

The trial court erred by denying defendant's motion to dismiss a breach of contract action for improper venue where the parties entered into an agreement with a forum selection clause requiring trial of any action in New York but the agreement constituted a "non-consumer loan transaction" and therefore fell within the exception to the statute declaring such clauses void as against public policy. N.C.G.S. § 22B-3.

Appeal by defendant from order entered 30 October 1996 by Judge Robert H. Hobgood in Chatham County Superior Court. Heard in the Court of Appeals 17 September 1997.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Robin K. Vinson, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Johnny M. Loper, Bonnie Liles, and Christine Sandez, for defendant-appellant.*

L.C. WILLIAMS OIL CO. v. NAFCO CAPITAL CORP.

[130 N.C. App. 286 (1998)]

JOHN, Judge.

Defendant appeals denial of its motion to dismiss. We reverse the trial court.

Pertinent facts and procedural history are as follows: Plaintiff and defendant entered into an agreement entitled "Lease/Finance Proposal" (the agreement), signed by plaintiff on or about 5 December 1995. The agreement designated defendant, NAFCO Capital Corp. (NAFCO; defendant), as "Lessor/Lender" and plaintiff, L. C. Williams Oil Co. (Williams; plaintiff), as "Lessee/Borrower." Critical to the instant appeal is whether the agreement constituted a "lease" or a "loan."

The agreement contained the following pertinent provisions:

| | |
|---|---|
| Equipment Cost: | $850,000.00 |
| Lease Term: | 60 months |
| . . . . | |
| Monthly Rental: | $18,445.00 |
| . . . . | |
| Purchase Option: | At the termination of the lease, upon such advance notice as the Lessor shall agree to, the Lessee shall have the option to purchase the leased equipment for ($1.00) one dollar. |

In addition, pursuant to a clause of the agreement entitled "Collateral," the parties agreed that NAFCO would retain "free and clear title as well as a first lien position on all of the equipment encompassed under the [agreement]," and further agreed that the "quicksale value" of the equipment exceeded $1,000,000.00. A subsequent provision entitled "Additional Collateral" also required Williams to furnish NAFCO "an assignment of account receivables[] in the amount of $600,000.00" to secure timely lease payments. The "Default" clause provided that, in the event of default by either party, "any and all fees, deposits and advance rentals [paid by Williams] shall not be refunded and will be deemed liquidated damages."

The agreement concluded with the following statement:

All actions or disputes arising out of this agreement shall be tried in the State of New York and County of New York and the laws of the State of New York shall apply.

Plaintiff filed the instant complaint 20 August 1996, alleging, *inter alia*, breach of contract. Defendant's subsequent motion to dismiss, filed 27 September 1996, was denied by order entered 30 October 1996. Defendant gave timely notice of appeal.

Following hearing of oral argument herein, the parties jointly filed with this Court a request to "stay[] or hold[] this matter in abeyance" until resolution of a bankruptcy proceeding naming NAFCO as debtor which had been filed 25 September 1997 in the United States Bankruptcy Court for the Eastern District of New York. On 4 May 1998, counsel for NAFCO filed with this Court a copy of an order of the Bankruptcy Court dated 20 March 1998 closing the case.

Although defendant's appeal is interlocutory, *see Burlington Industries, Inc. v. Richmond County*, 90 N.C. App. 577, 579, 369 S.E.2d 119, 120 (1988) (denial of motion to dismiss for improper venue is an interlocutory order because it does not entirely dispose of case as to all parties and issues), this Court has recently held the denial of a motion to dismiss for improper venue based upon a forum selection clause to be properly appealable. *See Cox v. Dine-A-Mate, Inc., Entertainment Publications, Inc., and CUC International, Inc.*, 129 N.C. App. 773, ——, —— S.E.2d ——, —— (1998). The circumstances *sub judice* being indistinguishable from *Cox*, we therefore proceed to consider defendant's appeal.

Defendant argues the forum selection clause "requires that the claims contained in the Complaint be brought, if at all, in courts of New York County, New York," and that the courts of North Carolina therefore constitute an improper venue. The parties agree that N.C.G.S. § 22B-3 (1996) is determinative of defendant's argument. The section provides as follows:

Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable. This prohibition shall not apply to non-consumer loan transactions . . . .

Defendant maintains, *inter alia*, that denial of its motion to dismiss was error because the agreement comprised a "non-consumer loan transaction" as opposed to a lease, thereby falling within the exception set out in G.S. § 22B-3. Accordingly, defendant continues, the forum selection clause in the agreement was enforceable, requir-

ing dismissal of plaintiff's complaint for lack of jurisdiction in North Carolina courts. The salient issue, therefore, is whether the agreement *sub judice* constituted a "non-consumer loan transaction."

Because G.S. § 22B-3 does not define "non-consumer loan," we must rely upon the rules of statutory construction to ascertain the meaning of these terms. Statutory interpretation presents a question of law, and the cardinal principle thereof is to ensure accomplishment of the legislative intent. *McLeod v. Nationwide Mutual Ins. Co.*, 115 N.C. App. 283, 288, 444 S.E.2d 487, 490, *disc. review denied*, 337 N.C. 694, 448 S.E.2d 528 (1994). To achieve this end, we must consider "the language of the statute . . . the spirit of the act and what the act seeks to accomplish." *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citation omitted). Further, we "accord[] words undefined in the statute their plain meaning as long as it is reasonable to do so." *Woodson v. Rowland*, 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991) (citations omitted).

Our General Assembly drafted G.S. § 22B-3 out of concern that enforcement of forum selection clauses would work to the disadvantage of the general public. Joseph E. Smith, *Civil Procedure—Forum Selection—N.C. Gen. Stat. § 22B-3 (1994)*, 72 N.C.L. Rev. 1608, 1613 (1994). Thus, the statute was drafted broadly, allowing exception solely for "non-consumer loan transactions," in the interest of protecting consumers and those with little bargaining power. *Id.*

In the chapter of our General Statutes entitled "Loan Brokers," the term loan is defined as

> an agreement to advance money or property in return for the promise to make payments therefor, whether such agreement is styled as a loan, . . . a lease or otherwise.

N.C.G.S. § 66-106(2) (Cum. Supp. 1997). Black's Law Dictionary defines a "consumer loan" as one

> which is made or extended to a natural person for family, household, personal or agricultural purposes and generally governed by truth-in-lending statutes and regulations.

Black's Law Dictionary 937 (6th ed. 1990). Therefore, the adjective "consumer" in G.S. § 22B-3 operates to describe that which is used by "a natural person for family, household, personal or agricultural purposes." *Id.; see also* N.C.G.S. § 25-9-109(1) (1995) ("consumer goods" are goods "used or bought for use primarily for personal, family or

household purposes"); N.C.G.S. § 25A-2(a)(3) (Cum. Supp. 1997) ("consumer credit sale" involves "goods or services . . . purchased primarily for a personal, family, household or agricultural purpose"). We therefore conclude that a "non-consumer loan" is one *not* extended to a natural person, and *not* used for "family, household, personal or agricultural purposes." Black's Law Dictionary 937 (6th ed. 1990).

Bearing the foregoing in mind, we examine the agreement at issue. Defendant contends the parties contemplated a loan from defendant to plaintiff, whereas plaintiff argues the parties intended a lease.

To determine whether an agreement constitutes a loan or a lease, the entire contract must be taken into consideration, without giving special prominence or effect to any one detached term or condition. *Food Service v. Balentine's*, 285 N.C. 452, 461, 206 S.E.2d 242, 249 (1974). It is a question of the parties' intent "as shown by the language they employed." *Id.* ·

Article 2A of the Uniform Commercial Code covers leases. N.C.G.S. §§ 25-2A-101-25-2A-532 (1995). G.S. § 25-2A-103(j) defines "lease" in relevant part as

> a transfer of the right to possession and use of goods for a term in return for consideration, *but a sale . . . or retention or creation of a security interest is not a lease.*

(emphasis added). According to N.C.G.S. § 25-1-201(37) (1995), a "security interest" is "an interest in personal property or fixtures which secures payment or performance of an obligation." Subsection (a) of G.S. § 25-1-201(37) provides:

> Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if:
>
> . . . .
>
> (iv) The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

The agreement *sub judice* expressly granted plaintiff the option, upon termination of the lease, "to purchase the leased equipment for . . . one dollar." This option to purchase for nominal consideration at

the end of the 60 months payment term is precisely the type of transaction anticipated by G.S. § 25-1-201(37)(a) and defined thereunder as a security interest, not a lease. *See id.; see also Borg-Warner Acceptance Corp. v. Johnston*, 97 N.C. App. 575, 581, 389 S.E.2d 429, 433 (1990), *cert. denied*, 333 N.C. 254, 424 S.E.2d 918 (1993). The collateral and default provisions of the agreement further protected defendant's security interest in the subject equipment.

The agreement also stated defendant would provide equipment to plaintiff in exchange for plaintiff's promise to make monthly payments of $18,445.00 for 60 months, a total of $1,106,700.00. It is noteworthy that the agreement likewise designated the "quicksale value" of the property to be "in excess of $1,000,000.00." The agreement thus in substance anticipated a loan transaction, regardless of its "Lease/Finance Proposal" designation. *See* G.S. § 66-106(2); *Balentine's*, 285 N.C. at 461-62, 206 S.E.2d at 249 (A principal test for determining whether contract comprises a conditional sale or lease is whether party is "obligated at all events to pay the total purchase price of the property which is the subject of the contract. . . . 'A lease of personal property is substantially equivalent to a conditional sale when the buyer is bound to pay rent substantially equal to the value of the property and has the option of becoming, or is to become, the owner of the property after all the rent is paid.'") (quoting 8 C.J.S. *Bailments* § 3(3) (1962)) (citations omitted).

In addition, other factors indicate the parties intended a loan transaction as opposed to a lease. For example, it is undisputed that NAFCO is a financing company. *See Litton Industries Credit Corp. v. Lunceford*, 333 S.E.2d 373, 375 (Ga. Ct. App. 1985) (circumstance that lender/lessor was a financing company rather than supplier an important factor in determining equipment lease actually a secured loan). Also, plaintiff, not NAFCO, was responsible for maintenance, insurance, taxes and expenses on the property which was the basis of the transaction. *See In Re Rex Group*, 80 B.R. 774, 780 (Bankr. E.D. Va. 1987) (lessee's promises to pay maintenance, insurance, taxes and all other expenses related to ownership indicia of secured loan rather than lease). Finally, we note paragraph forty-two of plaintiff's complaint characterizes the transaction as "a loan within the meaning of [G.S. §] 66-106(2)." Additionally, the agreement refers to NAFCO as "Lessor/*Lender*," Williams as "Lessee/*Borrower*," and, in one section entitled "Expenses," refers to the transaction as a "loan" (emphasis added). Based on the foregoing facts and analysis, we hold the agreement *sub judice* anticipated a secured loan.

**NATIONWIDE MUT. FIRE INS. CO. v. GRADY**

[130 N.C. App. 292 (1998)]

Further, the agreement contemplated a commercial transaction, and not a consumer one. The loan was intended for the mutual benefit of plaintiff and defendant, both corporate entities and not "natural person[s]." Black's Law Dictionary 937 (6th ed. 1990). Moreover, as defendant's brief emphasizes, the loan was intended for a business purpose, rather than "family, household personal or agricultural purposes." *Id.*

We conclude, therefore, that the agreement *sub judice* constituted a "non-consumer loan transaction." Further, we hold that the forum selection clause within the agreement falls within the exception provided in G.S. § 22B-3 and therefore is not "void and unenforceable" under the section. G.S. § 22B-3. Thus, the appropriate forum for dispute of the claims raised in plaintiff's complaint is, according to the agreement, the State of New York, and the trial court erred by denying defendant's motion to dismiss for improper venue.

Reversed.

Judges GREENE and TIMMONS-GOODSON concur.