**In re AIU INSURANCE COMPANY, Relator.**

No. 02–0648.

Supreme Court of Texas.

Sept. 3, 2004.

Rehearing Denied Dec. 3, 2004.

Mark A. Ticer, Law Office of Mark Ticer, Dallas, George O. Wilkinson, Vinson & Elkins, Houston, for other interested parties.

W. Wendell Hall, Fulbright & Jaworski L.L.P., Rosemarie Kanusky, San Antonio, Robert L. Guerra, Thornton Summers Biechlin Dunham & Brown, McAllen, Richard W. Bryan, Richard S. Kuhl and Elisa A. Eisenberg, for relator.

Staton Michael Childers, Strausburger & Price, Levon G. Hovnatanian, Dale Jefferson, Joe E. Luce, Christopher W. Martin, Bruce Edwin Ramage, Martin Disiere Jefferson & Wisdom, L.L.P., Arlo Dean Van Denover, Louis Dreyfus National Gas Corp., Houston, Edward D. Burbach, Office of Atty. Gen., Austin, Jaime A. Gonzalez, Gonzalez & Associates Law Firm, P.C., McAllen, for respondent.

Justice OWEN delivered the opinion of the Court, in which Justice HECHT, Justice SMITH, Justice WAINWRIGHT and Justice BRISTER joined.

The trial court denied a motion to enforce a contractual provision under which the parties agreed that all dispute resolution proceedings, including litigation, would take place in the State of New York. Because the facts are undisputed and the trial court clearly abused its discretion, we conditionally grant a writ of mandamus directing the trial court to dismiss this case.

## I

Louis Dreyfus Corporation obtained $70 million of pollution liability coverage for itself and its subsidiaries from AIU Insurance Company. AIU agreed to provide an additional $35 million in coverage in the event the initial amount was exhausted and Louis Dreyfus Corporation paid additional premiums. At the time the policy was

obtained, AIU was a New York corporation with its principal place of business in New York. In the policy, Dreyfus listed its address as New York, and the broker retained by Dreyfus to obtain a policy and negotiate coverage was also located in New York. The insurance policy contained a forum-selection clause by which the parties agreed that all disputes would be resolved in the State of New York:

> L.   Choice of Law and Forum—In the event that the Insured and the Company dispute the validity or formation of this policy or the meaning, interpretation or operation of any term, condition, definition, or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the Insured and the Company agree that the law of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York.

One of Luis Dreyfus Corporation's subsidiaries was Louis Dreyfus Natural Gas Corp., a Delaware corporation with its principal place of business in Texas. This subsidiary was listed as an insured in the AIU policy, and we will refer to it as Dreyfus. A few months after the policy issued, Dreyfus merged with American Exploration Company, which had wells and a pipeline gathering system in Hidalgo County. About a year and a half after the policy became effective, Dreyfus was added as a defendant in a suit in Hidalgo County in which it was alleged that Dreyfus had contaminated the air, soil, and ground water. The suit had originally been brought against American Explora-

tion Company prior to the merger and about three years before the AIU policy became effective.

AIU provided a defense under a reservation of rights and disputed coverage. Dreyfus sued AIU in Hidalgo County seeking a declaratory judgment that the environmental contamination claims against it were covered. Dreyfus also sued AIU for breach of contract, insurance code violations, intentional and negligent misrepresentation, and fraudulent inducement. AIU filed a motion to dismiss based on the insurance policy's forum-selection clause. AIU also filed a declaratory judgment action against Dreyfus in New York seeking resolution of the coverage issues. The Hidalgo County trial court denied AIU's motion to dismiss, and the court of appeals denied mandamus relief. AIU petitioned this Court for issuance of a writ of mandamus.

## II

This Court has never addressed the validity of a forum-selection clause like the one at issue in this case. At one time, forum-selection clauses were disfavored by American courts because such clauses were viewed as "ousting" a court of jurisdiction.[1] But in 1972, the United States Supreme Court held in *The Bremen v. Zapata Off–Shore Co.* that international forum-selection clauses "should be given full effect,"[2] absent "fraud, undue influence, or overweening bargaining power."[3] Subsequently, in *Carnival Cruise Lines, Inc. v. Shute*, the Supreme Court enforced a clause that selected Florida as the site of any litigation when the plaintiff sued in the

---

1. *See generally The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 9, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

2. *Id.* at 13, 92 S.Ct. 1907.

3. *Id.* at 12, 92 S.Ct. 1907.

State of Washington.[4]

In the wake of *The Bremen* and *Carnival Cruise Lines*, five of our Texas courts of appeals have enforced forum-selection clauses that provided that litigation must be brought in a particular state.[5] In each of those cases, the question was decided on appeal following a final judgment after the trial court enforced the forum-selection clause by either dismissing the case when the clause named a state other than Texas as the forum or holding that a defendant waived any objection to lack of personal jurisdiction by agreeing to a clause naming Texas as the forum.[6]

■ Dreyfus contends that the forum-selection clause in its policy should not be enforced because the United States Supreme Court has carved out exceptions that apply to the present controversy. In *The Bremen*, the Supreme Court held that a "forum clause should control absent a strong showing that it should be set aside," and that "[t]he correct approach [is] to enforce the forum clause specifically unless [the party opposing it] could clearly show that enforcement would be unreasonable

and unjust, or that the clause was invalid for such reasons as fraud or over-reaching."[7] The Court indicated that a clause would come within these exceptions if enforcement would contravene a strong public policy of the forum in which suit was brought, or when the contractually selected forum would be seriously inconvenient for trial.[8] Dreyfus contends that 1) many if not most potential witnesses regarding coverage issues are in Texas, 2) article 21.42 and former article 21.43, section 9 of the Texas Insurance Code[9] apply and require that Texas law governs, and 3) that Texas has a strong public interest in having the coverage issues litigated in Texas because insurance proceeds "could be used to benefit the health and welfare of the citizens and landowners of Hidalgo County, Texas," and the substantial amount of insurance available under the policy "is also likely to dissipate any potential adverse financial effects on" Dreyfus's successor, who has its offices in Houston and employs a large number of people in Texas. We reject each of these contentions.

**4.** 499 U.S. 585, 595–96, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

**5.** *My Cafe–CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 865–67 (Tex.App.-Dallas 2003, no pet.); *CMS Partners, Ltd. v. Plumrose USA, Inc.*, 101 S.W.3d 730, 734–36 (Tex.App.-Texarkana 2003, no pet.); *Holeman v. Nat'l Bus. Inst., Inc.*, 94 S.W.3d 91, 101–03 (Tex.App.-Houston [14th Dist.] 2002, pet. denied); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203–05 (Tex.App.-Eastland 2001, pet. denied); *Abacan Technical Servs. Ltd. v. Global Marine Int'l Servs. Corp.*, 994 S.W.2d 839, 843–45 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 71–75 (Tex.App.-Dallas 1996, no writ); *Barnette v. United Research Co.*, 823 S.W.2d 368, 370 (Tex.App.-Dallas 1991, writ denied); *Bellair, Inc. v. Aviall of Tex., Inc.*, 819 S.W.2d 895, 898 (Tex.App.-Dallas 1991, writ denied). *But see Stobaugh*

*v. Norwegian Cruise Line Ltd.*, 5 S.W.3d 232, 234 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (refusing to enforce a forum-selection clause, concluding that it was "fundamentally unfair").

**6.** *See id.*

**7.** 407 U.S. at 15, 92 S.Ct. 1907.

**8.** *Id.* at 15–17, 92 S.Ct. 1907.

**9.** TEX. INS. CODE art. 21.42; Act of June 7, 1951, 52nd Leg., R.S., ch. 491, § 1, 1951 Tex. Gen. Laws 868, 1091 (amended 1959) (amended 1963) (amended 1983), *amended and renumbered by* Act of May 30, 1993, 73rd Leg., R.S., ch. 685, § 18.04, 1993 Tex. Gen. Laws 2559, 2691 (former Tex. Ins.Code art. 21.43, § 9), repealed by Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 31(a), 2001 Tex. Gen. Laws 3658, 4208.

In *The Bremen* the United States Supreme Court had before it an international forum-selection clause that selected the London Court of Justice as the forum for dispute resolution.[10] The Supreme Court was unmoved by the argument that English courts might enforce an exculpatory clause in the contract of towage and the defendant might therefore be relieved of liability for its own wrongdoing.[11] In rejecting this concern as a basis for invalidating the forum-selection clause, the Court said it was not "dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum."[12] The Supreme Court explained that in an agreement between Americans regarding essentially local disputes, "the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause. The remoteness of the forum might suggest that the agreement was an adhesive one."[13] But the Supreme Court emphasized, "[Y]et even there the party claiming [the agreement should not be enforced] should bear a heavy burden of proof."[14] The Supreme Court observed that inconvenience in litigating in the chosen forum may be foreseeable at the time of contracting, and when that is the case, "it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."[15]

Dreyfus has not made such a showing. It was certainly foreseeable that Louis Dreyfus Corporation's subsidiaries, wherever located, would be required to litigate in New York under the policy's provisions. Dreyfus has not shown that litigating in New York would essentially deprive it of its day in court. Furthermore, the Supreme Court "refine[d] the analysis of *The Bremen*" in *Carnival Cruise Lines, Inc.*[16] In the latter case, a passenger sustained personal injuries during a cruise and sued in the State of Washington. A forum-selection clause was included in her printed ticket that selected Florida as the location of any litigation " 'arising under, in connection with or incident to' " the contract.[17] The Supreme Court noted that "a cruise ship typically carries passengers from many locales."[18] A forum-selection clause, the Court concluded, "has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions."[19] This benefited passengers, the Court observed, "in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued."[20] Florida was not "a 'remote alien forum' " the Su-

---

10. 407 U.S. at 2, 92 S.Ct. 1907.

11. *Id.* at 15, 92 S.Ct. 1907.

12. *Id.* at 17, 92 S.Ct. 1907.

13. *Id.*

14. *Id.*

15. *Id.* at 18, 92 S.Ct. 1907.

16. 499 U.S. 585, 593, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (emphasis added).

17. *Id.* at 587, 111 S.Ct. 1522.

18. *Id.* at 593, 111 S.Ct. 1522.

19. *Id.* at 593–94, 111 S.Ct. 1522.

20. *Id.* at 594, 111 S.Ct. 1522.

preme Court concluded.[21] The Court continued, "It bears emphasis that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness."[22] There was "no indication that petitioner set Florida as the forum in which disputes were to be resolved as a means of discouraging cruise passengers from pursuing legitimate claims."[23] Nor was there any "evidence that petitioner obtained respondents' accession to the forum clause by fraud or overreaching," and the passenger "presumably retained the option of rejecting the contract with impunity."[24]

In the present case, the State of New York is not a " 'remote alien forum.' "[25] There is no indication that AIU or Dreyfus chose New York as a means of discouraging claims. Nor is there any evidence of fraud or overreaching.

With regard to the Insurance Code, we need not decide the extent to which article 21.42 or former article 21.43, section 9 govern the insurance contract at issue.

Neither requires suit to be brought or maintained in Texas.[26]

■ Finally, we turn to Dreyfus's arguments that insurance proceeds will benefit Texans or Texas businesses and therefore the case should be tried in Hidalgo County. Not only does this "reflect[ ] something of a provincial attitude regarding the fairness of other tribunals," a notion rejected by the United States Supreme Court in *The Bremen*,[27] Dreyfus's argument blatantly suggests that the tribunal should consider, consciously or unconsciously, the benefits to the local community in deciding whether there is insurance coverage. This is highly offensive to a system of justice based on the rule of law and gives fodder to those who have in the past questioned the fairness of Texas courts. We categorically reject Dreyfus's arguments.

The forum-selection clause at issue is enforceable. To the extent the trial court concluded otherwise, it clearly abused its

---

**21.** *Id.* (quoting *The Bremen*, 407 U.S. 1, 17, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

**22.** *Id.* at 595, 111 S.Ct. 1522.

**23.** *Id.*

**24.** *Id.*

**25.** *Id.* at 594, 111 S.Ct. 1522 (quoting *The Bremen*, 407 U.S. at 17, 92 S.Ct. 1907).

**26.** Former article 21.43, section 9 said:
   Sec. 9. TEXAS LAW DEEMED ACCEPTED. The provisions of this code are conditions on which foreign or alien insurance corporations are permitted to do the business of insurance in this state, and any of the foreign or alien corporations engaged in issuing contracts or policies in this state are deemed to have agreed to fully comply with these provisions as a prerequisite to the right to engage in business in this state. Act of May 30, 1993, 73rd Leg., R.S., ch. 685, § 18.04, 1993 Tex. Gen. Laws 2559, 2691, *amending and renumbering* Act of

June 7, 1951, 52nd Leg., R.S., ch. 491, § 1, 1951 Tex. Gen. Laws 868, 1091 (amended 1959) (amended 1963) (amended 1983) (repealed 2001).
Article 21.42 provides:
   Art. 21.42. Texas Laws Govern Policies
      Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.
   TEX. INS. CODE art. 21.42.

**27.** 407 U.S. at 12, 92 S.Ct. 1907.

discretion. We turn to whether the clause should be enforced by mandamus.

## III

■ Dreyfus contends that AIU has an adequate remedy by appeal and therefore mandamus relief is unavailable. We disagree.

We have consistently granted mandamus relief to enforce another type of forum-selection clause, an arbitration agreement,[28] if the agreement to arbitrate is not governed by the Texas Arbitration Act.[29] The Texas Arbitration Act grants the right to an interlocutory appeal if a trial court denies a motion to compel arbitration,[30] but that right does not encompass arbitration agreements that are subject to the Federal Arbitration Act or other jurisdictions' statutory schemes.[31] We held in *Jack B. Anglin Co., Inc. v. Tipps* that mandamus relief should be granted to enforce arbitration agreements to which the Federal Arbitration Act applied,[32] and in *In re J.D. Edwards World Solutions* that mandamus should be granted when another state's arbitration statute applied.[33] We recognized in *Tipps* that "mandamus relief will not issue merely because an appellate remedy may be more expensive and time-consuming than mandamus," but that "it *will* issue when the failure to do so would vitiate and render illusory the subject matter of an appeal."[34] We concluded that failing to enforce a contractual agreement to arbitrate would "vitiate and render illusory the subject matter of an appeal."[35]

Dreyfus contends that we should treat a forum-selection clause requiring litigation to be brought in another state differently from arbitration agreements. It argues that requiring the parties to proceed to trial in Texas and then enforcing the forum-selection clause on appeal does not make an appellate remedy inadequate. Dreyfus additionally contends that AIU might prevail in a trial in Texas and that the mere possibility of a waste of judicial resources if AIU does not prevail would not render an appellate remedy inadequate. But the same considerations were present in *Tipps*. We could have required the parties to go forward with a trial and then enforced the arbitration clause if Anglin had lost and pursued its arbitration rights on appeal. Anglin presumably could also have proceeded with a breach of

---

28. "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 534, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995) (observing that arbitration provisions are a subset of forum-selection clauses).

29. *See, e.g., In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 551 (Tex.2002); *In re L & L Kempwood Assoc., L.P.*, 9 S.W.3d 125, 128 (Tex.1999); *In re La. Pac. Corp.*, 972 S.W.2d 63, 65 (Tex.1998); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex.1995).

30. TEX. CIV. PRAC. & REM. CODE § 171.098(a)(1).

31. *See generally In re J.D. Edwards World Solutions Co.*, 87 S.W.3d at 551 (holding that under the Texas Arbitration Act "a party is entitled to an interlocutory appeal from an order denying an application to compel arbitration only if it is 'made under Section 171.021[of the TAA.]' " and that the "TAA does not authorize an interlocutory appeal when the subject arbitration agreement is governed by Colorado law or the [Uniform Arbitration Act]").

32. 842 S.W.2d 266, 272–73 (Tex.1992).

33. *See* 87 S.W.3d at 551.

34. 842 S.W.2d at 272 (emphasis added).

35. *Id.*

contract action against the party who had resisted arbitration to recover the costs of trial and appeal. But these considerations did not deter us from concluding that an appeal following a trial would be an inadequate remedy. These same considerations are present when there is an agreement to pursue litigation in a forum other than Texas. We see no meaningful distinction between this type of forum-selection clause and arbitration clauses.

Dreyfus cites the seminal decision in *Walker v. Packer*[36] for the proposition that "mere" additional cost and delay will not render an appellate remedy inadequate. But such a characterization gives *Walker v. Packer* and its principles short shrift. The Court had before it a discovery dispute. The plaintiffs were seeking discovery from the defendant, which the trial court refused to compel. This Court refused to grant mandamus relief. Much of the discussion in *Walker v. Packer* regarding an inadequate remedy by appeal centers around discovery issues. The Court said, "The requirement that mandamus issue only where there is no adequate remedy by appeal is sound, and we reaffirm it today. No mandamus case has ever rejected this requirement, or offered any explanation as to why mandamus review of discovery orders should be exempt from this 'fundamental tenet' of mandamus practice."[37] The Court recognized that discovery rulings were truly " 'incidental' " pre-trial rulings,[38] and without the no-ade-quate-remedy-by-appeal limitation, "mandamus 'would soon cease to be an extraordinary writ.' "[39] The Court continued, "We thus hold that a party seeking review of a discovery order by mandamus must demonstrate that the remedy offered by an ordinary appeal is inadequate."[40] With regard to whether mandamus should issue "whenever an appeal would arguably involve more cost or delay," this Court said that such a rule would be "unworkable, both for individual cases and for the system as a whole."[41] The Court reasoned, "It follows that the system cannot afford immediate review of *every* discovery order *in general*."[42] The Court then disapproved of authorities "to the extent that they imply that a remedy by appeal is inadequate merely because it might involve more delay or cost than mandamus."[43]

But even with regard to discovery rulings, *Walker v. Packer* recognized that there were instances in which appellate courts should not await the outcome of a trial on the merits to remedy a trial court's abuse of discretion. Among these were instances in which a trial court compels "patently irrelevant or duplicative documents, such that it clearly constitutes harassment or imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party."[44] The Court cited as an example *General Motors Corp. v. Lawrence*[45] in which there was a "demand for information about all vehicles for all years."[46]

---

36. 827 S.W.2d 833 (Tex.1992).

37. *Id.* at 842.

38. *Id.* (quoting *Braden v. Downey*, 811 S.W.2d 922, 928 (Tex.1991)).

39. *Id.* (quoting *Braden*, 811 S.W.2d at 928).

40. *Id.*

41. *Id.*

42. *Id.* (emphasis added).

43. *Id.*

44. *Id.* at 843.

45. 651 S.W.2d 732 (Tex.1983).

46. *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992).

Such abuses could be remedied on appeal by a determination that the discovery was too broad and that the producing party was entitled to recover all its costs including the cost of production and attorney's fees. Or, in *In re Colonial Pipeline*, an appellate court could have remedied the trial court's requirement that a party create a document inventory by ordering the requesting party to pay all costs associated with creating that inventory. But this Court deemed such a remedy inadequate.[47] "Mere" additional cost and delay in waiting to resolve the issue on appeal was irrelevant. We have since granted mandamus relief in many instances to remedy overly broad discovery.[48] Clear harassment will not be tolerated under *Walker v. Packer*, and we have not wavered from that principle.

■ Subjecting a party to trial in a forum other than that agreed upon and requiring an appeal to vindicate the rights granted in a forum-selection clause is clear harassment. There is no benefit to either the individual case or the judicial system as a whole. The only benefit from breach of a forum-selection clause inures to the breaching party. That party hopes that its adversary will weary or avoid the cost of protracted litigation and settle when it would not otherwise have done so. Likewise, in comparing the respective burdens on the parties,[49] the burden on a party seeking to enforce a forum-selection clause of participating in a trial then appealing to vindicate its contractual right is great while there is no legitimate benefit whatsoever to the party who breached the forum-selection agreement.

We granted mandamus relief when a trial court required a workers' compensation carrier to pay its insured's attorney's fees each month as the litigation of her claims proceeded against the carrier.[50] We acknowledged that on appeal, a court could order the return of the attorney's fees, even though the actual collection of such an award was problematic.[51] We also observed that the carrier was not likely to exhaust its vast financial resources simply because it had to pay its adversary's attorney's fees.[52] What made the appellate remedy inadequate was that the situation could exert additional pressure on the defendant to settle rather than defend the claim. We said, "Requiring a party to advance the litigation costs of the opposition in addition to its own expenses so skews the litigation process that any subsequent remedy by appeal is inadequate."[53] This was because the plaintiff would have "little incentive to resolve the dispute economically and efficiently, and may even be encouraged to deliberately protract the proceedings to encourage a

---

47. *In re Colonial Pipeline*, 968 S.W.2d 938, 942–43 (Tex.1998).

48. *See, e.g., In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex.2003); *In re Am. Optical Corp.*, 988 S.W.2d 711, 713–14 (Tex.1998); *In re Colonial Pipeline Co.*, 968 S.W.2d at 942–43; *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex.1996); *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex.1995); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex.1995).

49. *See Walker*, 827 S.W.2d at 843 (concluding that mandamus relief would issue when a discovery request "imposes a burden on the producing party far out of proportion to any

benefit that may obtain to the requesting party").

50. *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 595 (Tex.1996).

51. *Id.* at 594.

52. *Id.* at 595 ("While the trial court's error in this case does not affect Travelers' ability to present the substance of its defense, it radically skews the procedural dynamics of the case.").

53. *Id.*

favorable settlement."[54] The same is true when a party refuses to abide by a forum-selection clause. By insisting that the case proceed in a forum other than that agreed upon, the breaching party is adding a layer of expense that would otherwise not exist, and the breaching party may be inclined to protract proceedings to encourage a favorable settlement.

This Court also said in *Walker v. Packer* that mandamus should issue if a "party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error . . . so that the trial would be a waste of judicial resources."[55] We further recognized that "one of the principal reasons that mandamus should be restricted" is to avoid "interlocutory appellate review of errors that, in the final analysis, will prove to be harmless."[56] When a trial court denies a motion to enforce a valid, enforceable forum-selection clause that specifies another state or country as the chosen forum, the trial court's final judgment is subject to automatic reversal at the request of the party seeking enforcement of the clause. As the United States Supreme Court held in *The Bremen*, "[t]he correct approach [is] to enforce the forum clause specifically."[57] Otherwise, courts would be guilty of the parochial and "provincial attitude"[58] that led jurists in another era to refuse to enforce forum-selection clauses. Thus, a

trial in a forum other than that contractually agreed upon will be a meaningless waste of judicial resources. The error is not harmless.

We have acted to prevent a waste of judicial resources in contexts other than discovery disputes. For example, although we generally do not issue writs of mandamus to correct venue decisions unless a statute provides such a remedy, we granted mandamus when a trial court improperly transferred sixteen cases to sixteen different counties.[59] We have also granted mandamus to require a party to exhaust its administrative remedies before proceeding in a court of law.[60]

We have enforced contractual agreements that substantively or procedurally affect proceedings in our courts. We granted mandamus relief to enforce an auto insurance policy provision requiring the insured and the insurer to submit to an appraisal process to determine the value of a vehicle when it is a total loss.[61] Today, we have held in *In re Prudential* that a contractual waiver of the right to a jury trial is enforceable by mandamus.[62] In *In re Wells Fargo Bank Minnesota N.A.* a court of appeals had also issued mandamus to enforce a contractual jury waiver.[63]

As Dreyfus points out, this Court previously declined to grant petitions for review in two cases in which the petitioners

---

54. *Id.*

55. *Walker*, 827 S.W.2d at 843; *see also Gen. Motors Corp. v. Tanner*, 892 S.W.2d 862, 864 (Tex.1995) (granting mandamus relief when a plaintiff refused to allow inspection of a part that was alleged to be defective and to have caused the accident).

56. *Walker*, 827 S.W.2d at 843.

57. *The Bremen*, 407 U.S. at 15, 92 S.Ct. 1907.

58. *Id.* at 12, 92 S.Ct. 1907.

59. *In re Masonite Corp.*, 997 S.W.2d 194, 198–99 (Tex.1999).

60. *Tex. Water Comm'n v. Dellana*, 849 S.W.2d 808, 810 (Tex.1993).

61. *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex.2002).

62. 148 S.W.3d 124 (Tex.2004).

63. 115 S.W.3d 600, 611–12 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding [mand. denied] ).

sought to enforce forum-selection clauses specifying states other than Texas as the location for dispute resolution.[64] But this Court's failure to grant a petition for writ of mandamus is not an adjudication of, nor even a comment on, the merits of a case in any respect, including whether mandamus relief was available.

We recognize there is some tension between our holding today and a few prior decisions of this Court concerning special appearances[65] and separate trials of damages and liability.[66] In *Canadian Helicopters*, we held that a denial of a special appearance is not reviewable by mandamus unless a trial court "act[s] with such disregard for guiding principles of law that the harm to the defendant becomes irreparable, exceeding mere increased cost and delay."[67] A year later, we nevertheless reviewed a special appearance by mandamus when there were only bare allegations of conspiracy to support personal jurisdiction and there was a " 'total and inarguable absence of jurisdiction.' "[68] We subsequently issued mandamus when a trial court denied a special appearance and the defendant potentially faced thousands of similar claims.[69] More importantly, the Legislature has now rejected this Court's view, expressed in *Canadian Helicopters* and other cases, that interlocutory review of the grant or denial of a special appearance should not generally be available. The Legislature enacted section 51.014(a)(7) of the Texas Civil Practice and Remedies Code, authorizing interlocutory appeals in such cases.[70]

With regard to separate trials, we said in *Iley v. Hughes* that there was an adequate remedy by appeal and therefore declined to issue mandamus.[71] But we did so only after reviewing the merits of the trial court's decision to try damages separately from liability and making it clear that this determination was error that would certainly be reversed on appeal.[72] We said, "Our conclusion is that although the discretion lodged in trial judges by Rule 174(b) in ordering separate trials of 'issues' is indeed broad and realistic, it does not authorize separate trials of liability and damage issues in personal injury litigation."[73] This Court effectively granted relief, since it was unlikely the trial court would proceed with separate trials in light of the Court's opinion.

Courts in other jurisdictions have enforced by mandamus forum-selection clauses similar to the one at issue.[74] A

---

64. *See In re GNC Franchising, Inc.*, 22 S.W.3d 929, 932 (Tex.2000) (Hecht, J., dissenting from denial of petitions).

65. *See, e.g., Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304 (Tex.1994).

66. *Iley v. Hughes*, 158 Tex. 362, 311 S.W.2d 648 (1958).

67. *Canadian Helicopters*, 876 S.W.2d at 308–09.

68. *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 776 (Tex.1995) (quoting *Canadian Helicopters*, 876 S.W.2d at 309).

69. *CSR Ltd. v. Link*, 925 S.W.2d 591, 596–97 (Tex.1996).

70. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

71. *Iley*, 311 S.W.2d at 651–52.

72. *Id.*

73. *Id.* at 651.

74. *Ex parte Procom Servs., Inc.*, 884 So.2d 827, 831, 2003 WL 23027621 (Ala.2003); *State ex rel. J.C. Penney Corp. v. Schroeder*, 108 S.W.3d 112, 114 (Mo.Ct.App.2003); *Ex parte D.M. White Constr. Co.*, 806 So.2d 370, 374 (Ala.2001); *Ex parte N. Capital Res. Corp.*, 751 So.2d 12, 15 (Ala.1999); *Furda v. Superior Court*, 161 Cal.App.3d 418, 427, 207 Cal.Rptr. 646 (Cal.App.1984); *see also Ex parte CTB, Inc.*, 782 So.2d 188, 190–92 (Ala.2000) (stat-

Florida court has reversed a trial court's failure to enforce a forum-selection clause on interlocutory appeal, without explaining the basis for interlocutory jurisdiction.[75]

We recognize that the United States Supreme Court ruled in *Lauro Lines S.R.L. v. Chasser*[76] that the denial of a motion to dismiss based on a forum-selection clause cannot be reviewed on interlocutory appeal under 28 U.S.C. § 1291 and the collateral order doctrine expressed in *Cohen v. Beneficial Industrial Loan Corp.*[77] The Supreme Court said that the right to be sued in another forum "while not perfectly secured by appeal after final judgment, is adequately vindicable ... as a claim that the trial court lacked personal jurisdiction over the defendant."[78] While we certainly respect the United States Supreme Court's reasoning, that court's conclusion is informative only, not binding, in the case before us. We note that the concurring opinion in *Lauro Lines* observed that the right to be sued in a contractually agreed upon forum "is not fully vindicated—indeed, to be utterly frank, [it] is positively destroyed—by permitting the trial to occur and reversing its outcome."[79] The concurring opinion concluded that the United States Supreme Court deemed appellate review adequate because the contractual right to be sued in an agreed forum was not *"important enough* to be vindicated" by interlocutory appeal.[80] This Court has struck a somewhat different balance in determining whether an appeal affords an adequate remedy. For example, we have intervened in discovery matters within the confines of the parameters set forth in *Walker v. Packer,* as discussed above, while it is an unusual occurrence for the United States Supreme Court to decide a discovery issue on interlocutory appeal. In addition, the federal court system has tools for interlocutory review that are unavailable in our state court system. A federal district court may certify a question to an appellate court under 28 U.S.C. 1292(b). Further, we have been given guidance about the wisdom and desirability of interlocutory review from time to time by the Texas Legislature. To cite one instance, the Texas Legislature has determined as a policy matter that interlocutory appeal is available when personal jurisdiction is at issue in a special appearance,[81] which is the opposite of the United States Supreme Court's view of whether an appeal adequately vindicates a challenge to personal jurisdiction.

Accordingly, we conclude that AIU does not have an adequate remedy by appeal.

## IV

■ Dreyfus contends that AIU waived reliance on the forum-selection clause by not raising the agreement sooner than it

---

ing that mandamus was the proper mechanism for obtaining review of a court's failure to enforce a forum-selection clause, but construing the clause as non-exclusive).

**75.** *Southwall Techs., Inc. v. Hurricane Glass Shield,* 846 So.2d 669, 670 (Fla.App.2003); see also *L.C. Williams Oil Co. v. NAFCO Capital Corp.,* 130 N.C.App. 286, 502 S.E.2d 415, 419 (1998) (reversing a trial court's failure to enforce forum-selection clause on interlocutory appeal).

**76.** 490 U.S. 495, 501, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989).

**77.** 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

**78.** 490 U.S. at 501, 109 S.Ct. 1976.

**79.** *Id.* at 502–03, 109 S.Ct. 1976 (Scalia, J., concurring).

**80.** *Id.* at 502, 109 S.Ct. 1976.

**81.** TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

did in the trial court. We disagree. AIU filed a motion to dismiss based on the forum-selection clause five months after Dreyfus filed suit. We have held that similar, and indeed far longer, delays are not a waiver of an arbitration clause,[82] and there is no sound basis for applying a different rule to the genre of forum-selection clauses to which the Dreyfus/AIU agreement belongs. Dreyfus further contends that it asserted its claims against AIU in demand letters more than a year before suit was filed, and AIU did not raise the forum-selection clause. Again, we rejected a similar argument in the arbitration context,[83] and we reject it here.

Dreyfus also asserts that AIU waived its right to rely on the forum-selection clause by requesting a jury trial, paying the jury fee and filing a general denial instead of a special appearance. In the arbitration context, we have consistently held that similar activities are not sufficient to waive an arbitration clause.[84] We likewise conclude that AIU's actions do not constitute a waiver of the forum-selection clause. Nor was AIU required to file a special appearance. It did not challenge the trial court's personal jurisdiction. It sought only to enforce its contractual right.

■ Finally Dreyfus argues that in the court of appeals, AIU did not address Dreyfus's waiver or "public policy" argu-

ments as to why the agreement should not be enforced. Regardless of whether this is the case, which we have not determined, a mandamus proceeding in this Court is an original proceeding, just as it is an original proceeding in the court of appeals. While it is certainly the better practice to present all arguments to a court of appeals before seeking mandamus in this Court, the failure to do so is not a failure to preserve error as it ordinarily would be in an appeal. AIU presented all its arguments to the trial court, and the trial court abused its discretion in denying the motion to dismiss. The proceeding before this Court is not directed at what the court of appeals did or did not do or how that court ruled.

\* \* \* \*

For the foregoing reasons, we conditionally grant a writ of mandamus directing the trial court to grant AIU's motion to dismiss.

Chief Justice PHILLIPS filed a dissenting opinion, in which Justice O'NEILL, Justice JEFFERSON and Justice SCHNEIDER joined.

Chief Justice PHILLIPS, joined by Justice O'NEILL, Justice JEFFERSON, and Justice SCHNEIDER, dissenting.

Because mandamus is an extraordinary remedy which undermines the normal ap-

---

**82.** *In re Serv. Corp. Int'l,* 85 S.W.3d 171, 174 (Tex.2002); *In re Bruce Terminix Co.,* 988 S.W.2d 702, 705–06 (Tex.1998); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex. 1996); *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 898–99 (Tex.1995).

**83.** *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 574 (Tex.1999) (holding that party's failure to initiate arbitration in response to letters requesting arbitration hearing did not waive right to arbitrate).

**84.** *See, e.g., In re Bruce Terminix,* 988 S.W.2d at 704–05 (holding that filing an answer and propounding a set of eighteen interrogatories

and a set of nineteen requests for production did not waive arbitration rights); *Mancias,* 934 S.W.2d at 90 (holding that filing of answer, sending interrogatories and requests for production, noticing depositions, participating in a court-ordered docket control conference, and entering into an agreement to set case for later date did not constitute a waiver of a contractual right to arbitration); *see also Marshall,* 909 S.W.2d at 898–99 (holding that even substantially invoking the judicial process does not waive a party's arbitration rights unless the opposing party proves it suffered prejudice as a result).

pellate process, courts reserve its use for very special circumstances. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). The writ issues when necessary to "correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

The Court reasons that we should grant mandamus relief here to enforce this forum selection clause because we routinely grant mandamus relief to enforce arbitration agreements not governed by the Texas Arbitration Act, which the Court characterizes as just "another type of forum selection clause." 148 S.W.3d at 115. But there are important differences between arbitration agreements governed by federal law and forum selection clauses. While Texas public policy has always encouraged arbitration, it has not always favored the forum selection clause.

The right to arbitration has been guaranteed in every Texas constitution.[1] *See* Tex. Const. art. XVI, § 13 (repealed 1969); Tex. Const. of 1869, art. XII, § 11; Tex. Const. of 1866, art. VII, § 15; Tex. Const. of 1861, art. VII, § 15; Tex. Const. of 1845, art. VII, § 15. Forum selection clauses, on the other hand, were initially disfavored by American courts because they were perceived to tamper with or "oust" a court's rightful jurisdiction. *See* Francis M. Dougherty, Annotation, *Validity of Contractual Provision Limiting Place or Court in Which Action May be Brought*, 31 A.L.R.4th 404, 409–14 (1984); R.D. Hursh, Annotation, *Validity of Contractual Provision Limiting Place or Court in Which Action May be Brought*, 56 A.L.R.2d 300, 306–320 (1957). Under this "ouster doctrine," forum selection clauses were often described as void on public policy grounds. As the Supreme Court said in *Ins. Co. v. Morse:*

> Every citizen is entitled to resort to all the courts of the country, and to invoke the protection which all the laws or all those courts may afford him. A man may not barter away his life or his freedom, or his substantial rights. In a criminal case, he cannot, as was held in *Cancemi's [v. People] Case*, 18 New York 128, be tried in any other manner than by a jury of twelve men, although he consent in open court to be tried by a jury of eleven men. In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge. So he may omit to exercise his right to remove his suit to a federal tribunal, as often as he thinks fit, in each recurring case. In these aspects any citizen may no doubt waive the rights to which he may be entitled. *He cannot, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights at all times and on all occasions, whenever the case may be presented.*
>
> That the agreement of the insurance company is invalid upon the principles mentioned, numerous cases may be cited to prove. They show that *agreements in advance to oust the courts of the jurisdiction conferred by law are illegal and void.*

---

1. Each constitution provided that it is "the duty of the Legislature to pass such laws as may be necessary and proper to decide differences by arbitration, when the parties shall elect that method of trial." TEX. CONST. 1876, art. XVI, § 13 (repealed 1969). This section was repealed by the voters in 1969 as one of the "obsolete, superfluous and unnecessary sections of the Constitution." Tex. H.J.R. No.3, 61st Leg., R.S., 1969 Tex. Gen. Laws 3230. The House Joint Resolution stated that the repealer was not intended to "make any substantive changes in our present constitution." *Id.*

*Morse*, 87 U.S. (20 Wall.) 445, 451, 22 L.Ed. 365 (1874) (emphasis added) (citations omitted). Twenty years before that, the Massachusetts Supreme Court explained the "ouster doctrine" in the following oft-quoted passage:

> The rules to determine in what courts and counties actions may be brought are fixed, upon considerations of general convenience and expediency, by general law; to allow them to be changed by the agreement of parties would disturb the symmetry of the law, and interfere with such convenience.

*Nute v. Hamilton Mut. Ins. Co.*, 72 Mass. (6 Gray) 174 (1856). This Court applied the "ouster doctrine" in 1919 to reject enforcement of a forum selection provision in an insurance contract which attempted to fix venue for suits against an insurance company in Dallas County. *Int'l Travelers' Ass'n v. Branum*, 109 Tex. 543, 212 S.W. 630, 631 (1919). Incorporating quotes from *Morse* and *Nute*, this Court concluded that such a clause was "utterly against public policy." *Id.* at 632. We subsequently followed *International Travelers* to hold that parties could not contract to avoid a mandatory venue statute. *Leonard v. Paxson*, 654 S.W.2d 440, 441–42 (Tex.1983); *Fid. Union Life Ins. Co. v. Evans*, 477 S.W.2d 535, 536 (Tex.1972); *see also Ziegelmeyer v. Pelphrey*, 133 Tex. 73, 125 S.W.2d 1038, 1040 (1939) ("venue is fixed by law and any [agreement] to change the law with reference thereto is void"). Based on these decisions, at least one court has concluded that Texas "treats forum-selection clauses as unenforceable per se." *High Life Sales Co. v. Brown–*

*Forman Corp.*, 823 S.W.2d 493, 497, 497 n. 3 (Mo.1992).

Forum selection clauses have gained much wider acceptance since the Supreme Court replaced the "ouster doctrine" with a more favorable view of them as a relevant commercial tool. *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12–13, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Moreover, a number of Texas intermediate appellate courts have joined this trend,[2] *International Travelers* notwithstanding. *See* James T. Brittain, Jr., *A Practitioner's Guide to Forum Selection Clauses in Texas*, 1 Hous. Bus. & Tax L.J. 79, 89–99 (2001).

But even were I to agree that the forum selection clause is now presumptively valid in Texas and that the trial court abused its discretion in failing to apply the parties' agreement in the underlying case, it does not follow that mandamus relief is appropriate. As a rule, we do not specifically enforce contractual rights by mandamus. We have done so in arbitration cases not just because it effectuated the parties agreement, but because of other special circumstances. In *Jack B. Anglin Co. v. Tipps*, we identified the procedural anomaly that permitted an interlocutory appeal from the denial of arbitration under the state act, but not the federal act. 842 S.W.2d 266, 272 (Tex.1992); *see also In re Prudential*, 148 S.W.3d 124, 141 (Tex.2004) (Phillips, C.J.dissenting) (discussing arbitration mandamus cases).

The Court suggests that we must grant mandamus relief here to conserve judicial resources, concluding that any trial in Texas will be a waste of time and money. But

---

**2.** This trend to enforce forum selection clauses has not been without its detractors. *See, e.g.,* David H. Taylor & Sara M. Cliffe, *Civil Procedure by Contract: A Convoluted Confluence of Private Contract and Public Procedure in Need of Congressional Control*, 35 U. RICH.

L. REV. 1085, 1095, 1161 (2002) (noting that THE BREMEN was a "sea-change in the way private agreement is viewed in relation to procedure" and describing the judicially created doctrine for enforcement of forum selection clauses as a "mess").

the cost or delay of having to go through a trial and an appeal to correct an error does not make the remedy at law inadequate. *Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60 (Tex.1991). Instead, the relator must show that the trial court's ruling will "permanently deprive [it] of substantial rights." *Polaris Inv. Mgmt. Corp. v. Abascal*, 892 S.W.2d 860, 862 (Tex. 1995) (per curiam). The law provides remedies other than mandamus to assure that contracting parties receive the benefit of their bargains. Thus, it is not inevitable that AIU will suffer irreparable loss if we do not intervene at this stage of the litigation. The United States Supreme Court has expressed a similar view, holding that a party's rights under a forum selection clause are not destroyed if vindication is postponed until a final, appealable judgment is rendered in the case. *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 501, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989). Justice Scalia, concurring separately, explained that a party's right to the immediate enforcement of a forum selection clause was simply not as important as the policy reasons for circumscribing interlocutory appeals:

> While it is true, therefore, that the "right not to be sued elsewhere than in [the selected forum]" is not fully vindicated—indeed, to be utterly frank, is positively destroyed—by permitting the trial to occur and reversing its outcome, that is vindication enough because the right is not sufficiently important to overcome the policies militating against interlocutory appeals.

*Id.* at 502–03, 109 S.Ct. 1976.

Nor do I believe that our action today, if indicative of things to come, will save judicial resources over the long term. The writ of mandamus should not be an alternative to appeal, available whenever an appellate court decides that trial court er-

rors demanded swift correction. *Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.2d 954, 955 (Tex.1990) (per curiam); *Pope v. Ferguson*, 445 S.W.2d 950, 954 (Tex.1969). It instead should be an extraordinary remedy reserved to correct clear errors for which no other adequate remedy exists. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d at 916, 917 (Tex.1985). A disciplined adherence to this latter limitation has generally been thought necessary to preserve "orderly" trial proceedings and to prevent the "constant interruption of the trial process by appellate courts." *Pope*, 445 S.W.2d at 954.

The law clearly provides a remedy other than mandamus to assure that contracting parties receive the benefit of their bargains. Because AIU has not shown that this remedy is inadequate, as that term has been generally understood in this state, I would deny the writ.