**In re KYOCERA WIRELESS CORPORATION, Relator.**

No. 08-04-00348-CV.

Court of Appeals of Texas, El Paso.

April 12, 2005.

Ken Slavin, Kemp Smith, P.C., El Paso, for Relator.

John R. Jones, Delgado Acosta Braden Jones PC, Houston, interested party for Hecmma, Inc.

William B. Hardie, Jr., El Paso, for Plaintiff.

Before BARAJAS, C.J., McCLURE, and LARSEN, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

At issue in this mandamus proceeding is the enforceability of a forum-selection clause in a contract between a Texas defendant/third party plaintiff and a California third party defendant. Because we conclude the clause is enforceable, we conditionally grant relief.

### FACTUAL SUMMARY

In 2003, Kyocera Wireless Corporation entered into a business relationship with Hecmma, Inc. to assemble battery packs for Kyocera cellular telephones. Hecmma is an electronics manufacturing services

company which performs different types of assembly processes. It assembles component parts obtained from twenty vendors into several different models of batteries used in Kyocera phones. As part of its normal product development process, Kyocera's engineering department evaluated various suppliers of battery pack components, including battery cells, and it included Coslight USA, Inc.[1] on the list of approved suppliers of battery cells. Between April 2003 and May 2004, Kyocera issued fifty-nine purchase orders to Hecmma for battery packs used in Kyocera phones. Because of Hecmma's tight financial condition, Kyocera agreed to pay the purchase orders "net 10" rather than the customary "net 30" or "net 60," meaning that Kyocera paid Hecmma a mere ten days after receiving a shipment. Although Kyocera paid approximately forty of the fifty-nine purchase orders, it refused to pay the rest. Hecmma contends Kyocera refused to pay the outstanding invoices due to battery pack failures.[2] These defective battery packs were shipped back to Hecmma.

Each purchase order issued by Kyocera contained a forum-selection clause providing that all disputes arising in connection with the agreement would be governed by California law and heard only by a court of competent jurisdiction in San Diego County, California. Kyocera has a manufacturing plant in San Diego and its principal place of business is in San Diego. Hecmma is a Texas Corporation with its principal place of business in El Paso. Through a subcontractor, the company has access to manufacturing facilities in Cuidad Juarez, Mexico.

In July 2003, Hecmma began production of the Model 7135 cellular phone battery packs for Kyocera. According to Hecmma's executive vice-president, Manuel Rivera, Kyocera specified Coslight as the supplier of the cell. In October 2003, Kyocera notified the United States Consumer Product Safety Commission of a safety issue with the Model 7135 battery packs.[3] In January 2004, Kyocera initiated a voluntary recall of 140,000 defective battery packs. Following an internal investigation and independent testing performed by Motorola Product Test Services, Kyocera concluded that the battery pack failures resulted from defective battery cells provided by Coslight. Coslight refused to accept responsibility and insisted that the batteries failed due to a defect in the design of Kyocera's phones. Kyocera then asked Hecmma to assist with the recall. Hecmma agreed to allow Kyocera to offset its payments to Hecmma by $25,000 per week to cover the costs of the recall. In March 2004, Kyocera returned about 37,000 of the Model 7135 battery packs to Hecmma. Hecmma claims that Kyocera instructed it to stop using Coslight battery cells and to refuse payment on the outstanding amounts Hecmma owed to Coslight.

On April 13, 2004, Coslight filed suit against Hecmma in El Paso County for breach of contract, alleging that Hecmma failed to pay invoices associated with a number of purchase orders issued in 2003. In May, Kyocera returned an additional 18,000 Model 7135 battery packs to Hecm-

1. Coslight is a California corporation with its principal place of business in Alhambra, California. Its parent company is Coslight International Group of Hong Kong.

2. The battery packs malfunctioned and some exploded, harming consumers.

3. Kyocera subsequently issued another voluntary recall due to the discovery of counterfeit batteries. Kyocera learned that Hecmma had produced and released to a distributor approximately 1,000,000 batteries containing unauthorized components.

ma and ended its business relationship with the company. On May 28, Hecmma answered Coslight's suit and filed a third party petition against Kyocera alleging breach of contract. Hecmma later amended its pleadings against Kyocera to add causes of action based on misappropriation of trade secrets/unfair competition, fraud/misrepresentation, and indemnity/contribution. On June 17, 2004, Kyocera filed a motion to dismiss Hecmma's suit based on the forum-selection clause contained in the purchase orders. It also contended that it had been improperly joined in the action. In July 2004, Kyocera filed suit against Hecmma in United States District Court in San Diego [4] but the parties agreed to stay that litigation until November 30, 2004 in order to give the Texas court an opportunity to rule on Kyocera's motion to dismiss.[5] Following a hearing, the trial court denied Kyocera's motion to dismiss without specifying the basis for its ruling. Kyocera filed a petition seeking a writ of mandamus requiring the trial judge to dismiss Hecmma's suit against it.

## FORUM–SELECTION CLAUSE

Kyocera contends it is entitled to mandamus relief because: (1) Hecmma did not carry its burden of showing that the forum-selection clause is unenforceable and (2) Kyocera does not have an adequate remedy by appeal.

### Standard of Review

■ Mandamus will lie only to correct a clear abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)(orig.proceeding). Moreover, there must be no other adequate remedy

at law. *Id.* An appellate court rarely interferes with a trial court's exercise of discretion. A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is without basis or guiding principles of law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985)(orig.proceeding). With respect to resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 839–40. The relator must therefore establish that the trial court could reasonably have reached only one decision. *Id.* Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to a trial court's determination of the legal principles controlling its ruling, the standard is much less deferential. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ. *Walker*, 827 S.W.2d at 840.

■ An appellate court will deny mandamus relief if another remedy, usually appeal, is available and adequate. *Street v. Second Court of Appeals*, 715 S.W.2d 638, 639–40 (Tex.1986)(orig.proceeding). Mandamus will not issue where there is "a clear and adequate remedy at law, such as a normal appeal." *Walker*, 827 S.W.2d at 840, *quoting State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984). Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. The writ will issue "only in situa-

---

4. The mandamus record does not contain a copy of Kyocera's pleadings but it appears that Kyocera is seeking injunctive relief based on the forum-selection clause.

5. The record before us does not reflect the status of that suit.

tions involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989), *quoting* James Sales, *Original Jurisdiction of the Supreme Court and the Courts of Civil Appeals of Texas*, in *Appellate Procedure in Texas*, § 1.4(1)(b) at 47 (2d Ed.1979).

### Enforceability of Forum– Selection Clauses

Forum-selection clauses have been historically disfavored. *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 9, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). Courts generally declined to enforce these clauses on the ground they were "contrary to public policy" or because they had the effect of "oust[ing] the jurisdiction" of the court. *See id.* In *Zapata*, however, the Supreme Court found these concerns to be unjustified and enforced a forum-selection clause. Zapata, a Houston-based American corporation, had contracted with Unterweser, a German corporation, to tow Zapata's ocean-going drilling rig from Louisiana to a point off Ravenna, Italy, where Zapata agreed to drill certain wells. *Id.*, 407 U.S. at 2, 92 S.Ct. at 1909. The towage contract negotiated by the parties contained a forum-selection clause which provided that any dispute would be heard by the London Court of Justice. *Id.* Unterweser's deep sea tug departed from Louisiana with the rig but it was damaged in a severe storm in the Gulf of Mexico. *Id.*, 407 U.S. at 3, 92 S.Ct. at 1910. Zapata instructed the tug to tow the damaged rig to Tampa, Florida, the nearest port. *Id.* Rather than filing suit in the London Court of Justice, Zapata filed suit in admiralty in the United States District Court at Tampa. *Id.*, 407 U.S. at 3–4, 92 S.Ct. at 1910. Unterweser moved to dismiss based on the forum-selection clause. *Id.*, 407 U.S. at 4, 92 S.Ct. at 1910. At the same time, Unterweser commenced an action in the High Court of Justice in London as provided by the contract. *Id.* The trial court denied Unterweser's motion to dismiss and the court of appeals affirmed. *Id.* 407 U.S. at 6, 92 S.Ct. at 1911.

Noting the expansion of overseas commercial activities by United States companies and eschewing the parochial concept that all disputes must be decided under our laws and by our courts, the Supreme Court held that forum-selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances. *Id.*, 407 U.S. at 10, 92 S.Ct. at 1913. Enforcement is unreasonable where there is evidence of fraud, undue influence, or "overweening bargaining power." *Id.*, 407 U.S. at 12, 92 S.Ct. at 1914. A clause might also be invalid if its enforcement would contravene a strong public policy of the forum in which suit was brought, or when the contractually selected forum would be seriously inconvenient for trial. *Id.*, 407 U.S. at 15, 92 S.Ct. at 1916. It is incumbent on the party seeking to avoid the forum-selection clause to demonstrate that trial in the contractual forum would be so gravely difficult and inconvenient that it would for all practical purposes be deprived of its day in court. *Id.*, 407 U.S. at 18, 92 S.Ct. at 1917. The party seeking to avoid the forum-selection clause bears a heavy burden of proof. *Id.*, 407 U.S. at 17, 92 S.Ct. at 1917. But the court added that a claim of inconvenience will not render a forum clause unenforceable where the clause is found in a freely-negotiated private international commercial contract. *Id.*, 407 U.S. at 16, 92 S.Ct. at 1916–17. A claim of serious inconvenience of the contractual forum might carry greater weight when dealing with a contract between two Americans to resolve their essentially local disputes in a

remote alien forum. *Id.*, 407 U.S. at 17, 92 S.Ct. at 1917. In such a case, the remoteness of the forum might suggest that the agreement was an adhesive one, or that the parties did not have the particular controversy in mind when they made their agreement; yet even there the party claiming inconvenience bears a heavy burden of proof. *Id.* In upholding this particular forum-selection clause, the court observed that the choice of forum was made in an arm's length negotiation by experienced and sophisticated businessmen. *Id.*, 407 U.S. at 12, 92 S.Ct. at 1914. Such a clause eliminates uncertainties and provides a neutral forum for the resolution of disputes. *Id.*, 407 U.S. at 13, 92 S.Ct. at 1914–15.

In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the Supreme Court considered the validity of a forum-selection clause found in a form contract. The Shutes, residents of Washington, purchased tickets through a Washington travel agent for a cruise from Los Angeles to Mexico. *Id.*, 499 U.S. at 587, 111 S.Ct. at 1524. The travel agent forwarded payment to Carnival at its Florida headquarters and Carnival mailed the tickets to the Shutes. *Id.* The tickets contained a forum-selection clause designating Florida as the forum for resolution of any disputes. *Id.* Mrs. Shute was injured during the cruise while the ship was in international waters and the Shutes brought a negligence suit against Carnival in Washington. *Id.*, 499 U.S. at 588, 111 S.Ct. at 1524. Carnival moved for summary judgment, contending that the forum-selection clause required the Shutes to bring suit in Florida, and alternatively, that the district court lacked personal jurisdiction because Carnival had insufficient contacts with Washington. *Id.* The district court granted summary judgment on the jurisdictional argument. The court of appeals reversed, holding that the forum-

selection clause should not be enforced because the Shutes were not business savvy people and the clause was not freely negotiated. *Id.* 499 U.S. at 588–89, 111 S.Ct. at 1525. The court concluded that the Shutes were physically and financially incapable of pursuing litigation in Florida. *Id.*, 499 U.S. at 589, 111 S.Ct. at 1525.

The Supreme Court rejected the notion that a non-negotiated clause in a form contract is never enforceable simply because it is not the subject of bargaining. *Id.*, 499 U.S. at 593, 111 S.Ct. at 1527. A forum-selection clause is not *per se* invalid simply because it is found in a form contract. *See id.* The issue is whether the clause is reasonable. *See id.* The Supreme Court did not accept the court of appeals' conclusory reference to the inconvenience and financial problems created by litigating the action in Florida and held that the Shutes had failed to carry the heavy burden of proof required to set aside the clause on grounds of inconvenience. *Id.*, 499 U.S. at 594–95, 111 S.Ct. at 1528. A forum-selection clause found in a form contract is subject to judicial scrutiny for fundamental fairness, but there was no evidence that Florida was chosen to discourage pursuit of legitimate claims and any suggestion of bad faith was allayed by the fact that Florida is Carnival's principal place of business. *Id.*, 499 U.S. at 595, 111 S.Ct. at 1528. The court also concluded that there was no evidence the clause was obtained by fraud or overreaching. *Id.* Noting that Florida was not a "remote alien forum" and the dispute was not an "essentially local one," the court enforced the forum-selection clause because the Shutes did not satisfy the heavy burden of proof required to set aside the clause on grounds of inconvenience. *Id.*, 499 U.S. at 594–95, 111 S.Ct. at 1528.

In 2004, the Texas Supreme Court adopted the *Zapata–Carnival* test in the

context of a mandamus proceeding. *See In re AIU Insurance Company*, 148 S.W.3d 109, 111 (Tex.2004). There, the Louis Dreyfus Corporation, which had its offices in New York, obtained pollution insurance from AIU Insurance for itself and its subsidiaries, including Dreyfus Natural Gas. *AIU*, 148 S.W.3d at 111. AIU is a New York Corporation with its principal place of business in New York. *Id.* The insurance policy contained a forum-selection clause by which the parties agreed that all disputes would be resolved in the State of New York. *Id.* Dreyfus Natural Gas is a Delaware corporation with its principal place of business in Texas. *Id.* Dreyfus merged with a company which had a contamination suit pending in Hidalgo County Texas prior to issuance of the policy, and Dreyfus was added as a defendant. *Id.* AIU provided a defense under a reservation of rights and disputed coverage. *Id.* Dreyfus sued AIU in Hidalgo County for a declaratory judgment that the environmental contamination claims against it were covered. *Id.* AIU sued for declaratory judgment in New York and moved to dismiss the Texas suit based on the insurance policy's forum-selection clause. *Id.* Dreyfus opposed the motion to dismiss because most of the witnesses lived in Texas, the action involved the application of Texas insurance law, and Texas had a strong public interest in having the insurance coverage rates litigated in Texas and the proceeds distributed in Texas. *Id.* The Hidalgo County trial court denied the motion to dismiss and the court of appeals denied mandamus relief. *Id.* Applying the *Zapata–Carnival* test, the Supreme Court held that Dreyfus failed to meet its heavy burden of proof to "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 112–13, *quoting Zapata*, 407 U.S. at 15, 92 S.Ct. 1907. New York is

not a "remote alien forum"; it was foreseeable to Dreyfus that a subsidiary would be required to litigate in New York; and litigation in New York did not deny Dreyfus its day in court. *Id.* at 113–14. Additionally, the Texas Insurance Code does not require that actions be litigated only in Texas. *Id.* at 114. In the absence of evidence of fraud or overreaching, or that AIU or Dreyfus chose New York as a means of discouraging claims, the court concluded that the trial court abused its discretion in not enforcing the forum-selection clause. *Id.* at 114–15. The Supreme Court also determined that AIU did not have an adequate remedy by appeal, and therefore, mandamus relief was available. *Id.* at 115.

Three months later, the Texas Supreme Court enforced another forum-selection clause, holding that enforcement is mandatory unless the opposing party clearly demonstrates that enforcement would be unreasonable and unjust, or that the clause was invalid due to fraud or overreaching. *In re Automated Collection Technologies*, 156 S.W.3d 557 (Tex. 2004). Professional Systems Corporation (PSC), a Pennsylvania corporation, filed suit in Texas against Automated Collection Technologies, Inc., a Texas corporation, for failure to pay for services rendered pursuant to a written contract. *Id.* 156 S.W.3d at 558–59. The contract designated Pennsylvania as the forum for resolutions of disputes arising out of or related to the contract. *Id.* Automated answered and filed counterclaims for declaratory judgment, fraudulent inducement, breach of contract, negligence, and attorney's fees. *Id.* Automated also sought discovery from PSC. *Id.* Although it had been sued in its home state, Automated sought dismissal of the suit pursuant to the forum-selection clause. *Id.* PSC opposed enforcement of the forum-selection clause and argued that Automated had

waived enforcement by seeking affirmative relief and by participating in the Texas litigation. *Id.* Neither party introduced evidence at the dismissal hearing and the trial court denied relief. *Id.* The Supreme Court held that Automated did not waive enforcement of the forum-selection clause by seeking affirmative relief or by participating in the litigation. *Id.* 156 S.W.3d at 559–60. Because PSC did not offer any evidence showing that enforcement of the forum-selection clause would be unreasonable and unjust, or that the clause was invalid due to fraud or overreaching, enforcement was mandatory. *Id.* 156 S.W.3d at 559–60.

### *Hecmma's Arguments*

Hecmma offers four reasons why the forum-selection clause should not be enforced: (1) it is unenforceable because Hecmma received the written purchase orders after it had already begun work on a particular order it had received electronically; (2) it is unenforceable due to inconvenience; (3) enforcement is contrary to public policy; and (4) the clause is inapplicable because Kyocera was joined as a third-party defendant and venue is determined exclusively by the Texas venue statute.

### *Was the Forum–Selection Clause Conspicuous?*

Hecmma first argues that Kyocera placed orders for the battery packs by telephone or electronically. Hecmma would then begin performing the work before it actually received the written purchase order. We understand Hecmma to argue that it did not accept the terms and conditions stated on the written purchase order and the forum-selection clause was not conspicuous.

Loren Lee Lasche, Kyocera's Director of Procurement, testified that placing an order with Hecmma electronically or by telephone is the first step in the purchase order release process. At the same time an electronic order is created, the system instantaneously prints a hard copy which is immediately mailed to Hecmma. The hard copy of the purchase order contains the terms and conditions of the transaction. These terms and conditions are standard and remained the same throughout Kyocera's dealings with Hecmma. The front of each purchase order sent to Hecmma states in bold capital letters:

**ALL DELIVERIES AND PERFORM-ANCE UNDER THIS PURCHASE ORDER SHALL BE GOVERNED BY KWC[6] STANDARD PURCHASE ORDER TERMS AND CONDITIONS PRINTED ON REVERSE.**

Paragraph 1 of the purchase order expressly states that the terms and conditions apply to *any* Kyocera purchase order issued to Hecmma. The forum-selection clause is found in Paragraph 15, the heading of which states "Applicable Law." Kyocera sent Hecmma fifty-nine purchase orders, each containing the identical terms and conditions, including the forum-selection clause. According to Lasche, Hecmma did not protest the terms and conditions or notify Kyocera that it did not wish to be bound by them.

■ A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognize the existence of such a contract. Tex.Bus. & Comm.Code Ann. § 2.204(a)(Vernon 1994); *Adams v. H & H Meat Products, Inc.,* 41 S.W.3d 762, 771 (Tex.App.-Corpus Christi 2001, no pet.). Where a sale of goods is between merchants, a written confirmation sent by

**6.** Kyocera Wireless Corporation.

a party within a reasonable time after an order is placed satisfies the statute of frauds. TEX.BUS. & COMM.CODE ANN. § 2.201(b)(Vernon 1994). If the receiving party has reason to know the contents of the written confirmation and does not object to the contents within ten days after it is received, the contract terms set forth in the written confirmation are enforceable. TEX.BUS. & COMM.CODE ANN. § 2.201(b). Because Hecmma admittedly received the purchase orders but never objected to the terms and conditions, Hecmma accepted the forum-selection clause.

■ Hecmma has not cited any authority for its argument that the forum-selection clause must be conspicuous. Section 35.53 of the Texas Business and Commerce Code requires forum-selection clauses to be conspicuous, but only where the contract is for the sale, lease, exchange, or other disposition for value of goods for the price, rental, or other consideration of $50,000 or less. TEX.BUS. & COM. CODE ANN. § 35.53(a)(Vernon 2002). The mandamus record contains only one purchase order and it is in the amount of $250,680.98.

### Inconvenience of the Forum

■ Alleging that the witnesses, facilities, and the inventory are located in El Paso and Cuidad Juarez, Hecmma next argues that the clause should not be enforced due to inconvenience. Hecmma attached the affidavit of Manuel Rivera, its executive vice-president, to its response to the motion to dismiss. Rivera testified that all Hecmma employees, persons with knowledge of relevant facts, and its potential witnesses reside and work in either El Paso or Cuidad Juarez. But California is not a "remote alien forum" and the dispute is not essentially a local one given that Hecmma purchased the battery cells from Coslight, a California corporation, assem-

bled the battery packs in Cuidad Juarez, and shipped them to Kyocera in California. Under these circumstances, Hecmma bears a heavy burden to prove that the forum-selection clause should not be enforced on grounds of serious inconvenience. While Hecmma established that its employees and potential witnesses reside in the El Paso area, it did not prove that it would be seriously inconvenient to pursue litigation in San Diego County. Essentially bare allegations of inconvenience are insufficient to satisfy its burden. *See Carnival*, 499 U.S. at 594, 111 S.Ct. at 1527–28; *Automated*, 156 S.W.3d 557, 2004 WL 2754650 at *2.

### Public Policy

■ Hecmma also contends that enforcement of the forum-selection clause is contrary to public policy because Texas has an interest in ensuring that defective batteries do not reach Texas consumers. Rivera's affidavit states that in July 2004, representatives from Hecmma met with investigators from the United States Consumer Product Safety Commission and the Product Safety Division of the Texas Department of Health regarding the initial recall of the defective battery packs. Hecmma is cooperating with the investigation and has allowed the CPSC to tour its production facility and take sample batteries from storage in Cuidad Juarez. Hecmma has agreed in writing not to sell, distribute, or destroy any of the batteries sampled by the CPSC until the investigation is complete. There is no evidence that Texas consumers are more affected by the safety issue than other consumers, and Hecmma does not explain how litigating its claims against Kyocera in Texas will provide more protection to Texas consumers than if the matter is litigated in California.

### The Texas Venue Statute

■ Finally, Hecmma contends that the forum-selection clause is inapplicable because Kyocera is a third-party defendant and Section 15.062 of the Texas Civil Practice and Remedies Code determines venue. Hecmma argues that Kyocera was properly joined and its claim against Kyocera arises out of the subject matter of Coslight's claim against Hecmma. Hecmma maintains that Kyocera is a necessary and indispensable party whose absence will subject Hecmma to inconsistent obligations. To the extent Hecmma argues that a venue statute will always trump a forum-selection clause, we disagree. If that were true, forum-selection clauses would seldom be enforceable.

> Section 15.062 provides:
> (a) Venue of the main action shall establish venue of a counterclaim, cross claim, or third-party claim properly joined under the Texas Rules of Civil Procedure or any applicable statute.
> (b) If an original defendant properly joins a third-party defendant, venue shall be proper for a claim arising out of the same transaction, occurrence, or series of transactions or occurrences by the plaintiff against the third-party defendant if the claim arises out of the subject matter of the plaintiff's claim against the original defendant.

TEX.CIV.PRAC. & REM.CODE ANN. § 15.062 (Vernon 2002). Application of the statute is dependent upon whether the third-party claim against Kyocera was properly joined. If not, Hecmma's argument fails and the forum-selection clause must be enforced. Rule 38 of the Texas Civil Procedure provides, in relevant part, that:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a citation and petition to be served upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him. The third-party plaintiff need not obtain leave to make the service if he files the third-party petition not later than thirty (30) days after he serves his original answer. Otherwise, he must obtain leave on motion upon notice to all parties to the action.... Any party may move to strike the third-party claim, or for its severance or separate trial.

TEX.R.CIV.P. 38.

Coslight's pleadings allege that Hecmma failed to pay invoices for battery cells shipped between May 2003 and December 2003. It also seeks damages for cancellation of a purchase order in December 2003. Hecmma alleges in its third-party action that Kyocera terminated their business relationship in May 2004 and refused to accept shipment of battery packs subject to pending purchase orders. The petition also alleges that Kyocera refused to pay invoices in excess of $1 million. The evidence shows that Kyocera paid approximately forty of the fifty-nine purchase orders issued to Hecmma, but had refused to pay the remainder.

There is no evidence that Kyocera is liable for all or even part of Coslight's claim against Hecmma for the unpaid purchase orders in 2003. Hecmma has not shown that Coslight's claim is related to Hecmma's claims against Kyocera. Hecmma offered no evidence that Kyocera's unpaid purchase orders were for battery packs containing Coslight cells. Rivera's affidavit stated that Hecmma produced a number of different battery packs for Kyocera using components obtained from a number of suppliers, including Coslight. Kyocera paid Hecmma for the majority of the fifty-nine purchase orders issued between April 2003 and May 2004, and allegedly owes $1 million on the remaining

nineteen. Coslight is suing Hecmma for $2,369,262.50 in outstanding invoices related to purchase orders issued in 2003. There is no evidence that Kyocera failed to pay any purchase orders issued in 2003.

Hecmma's claim that Kyocera instructed it not to pay Coslight does not render Kyocera liable for Hecmma's failure to pay its 2003 purchase orders under the indemnity/contribution theories relied on by Hecmma in its petition. Hecmma relies on Sections 33.013 and 82.002(a) of the Texas Civil Practice and Remedies Code as a basis for its contribution claim. But because Coslight asserts only a contract claim against Hecmma, the proportionate responsibility scheme found in Section 33.013 is inapplicable. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 33.013(a)(Vernon Supp. 2004–05) (chapter 33 applies to tort actions). Section 82.002(a) requires a manufacturer to indemnify a seller against loss in a products liability action. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 82.002(a) (Vernon 1997). Coslight has not brought a products liability action against Hecmma. Hecmma also alleges a common law indemnity claim against Kyocera, but its contractual relationship with Kyocera does not support a claim for common law indemnity. *See Astra Oil Co. v. Diamond Shamrock Refining,* 89 S.W.3d 702, 706 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). Inasmuch as Hecmma failed to show that Kyocera is liable for any of Coslight's claims against Hecmma, the third-party action against Kyocera was improperly joined and Section 15.062 is inapplicable.

Because Hecmma failed to prove that the forum-selection clause is invalid and unenforceable, the trial court clearly abused its discretion by failing to dismiss Hecmma's suit against Kyocera. We conditionally grant the writ of mandamus. The writ will not issue unless the trial court fails to withdraw its prior order and dismiss the third party suit against Kyocera.

LARSEN, J., sitting by assignment.