In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00019-CV


______________________________




CMS PARTNERS, LTD., Appellant



V.



PLUMROSE USA, INCORPORATED, Appellee




 


On Appeal from the Dallas County Court at Law Number 3


Dallas County, Texas


Trial Court No. CC-01-4464-C




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Based on a forum selection clause, the trial court granted Plumrose USA, Incorporated's plea
in abatement and motion to dismiss. On appeal, CMS Partners, Ltd. contends the trial court
committed reversible error by (1) enforcing an unenforceable forum selection clause and (2) failing
to make findings of fact and conclusions of law. 

 On February 1, 1998, Plumrose contracted with CMS to develop and execute programs that
would generate sales of Plumrose's products. Subsequently, the business relationship deteriorated. 
CMS filed suit for breach of contract in Dallas County, and a default judgment was entered against
Plumrose. Plumrose was granted a new trial, and, based on a forum selection clause in the contract,
Plumrose filed a plea in abatement and a motion to dismiss, contending venue was mandatory in
Middlesex County, New Jersey, the location of its headquarters and principal place of business. The
trial court granted Plumrose's plea and motion, and CMS timely filed a request for findings of fact
and conclusions of law. Subsequently, CMS filed a notice of past due findings of fact and
conclusions of law. See Tex. R. Civ. P. 297. The trial court failed to comply with the request. CMS
brings this appeal. 

Forum Selection Clause 

 In Texas, forum selection clauses are enforceable provided (1) the parties have contractually
consented to submit to a particular jurisdiction, and (2) the other state recognizes the validity of such
provisions. Accelerated Christian Educ., Inc. v. Oracle Corp., 925 S.W.2d 66, 70 (Tex. App.-Dallas
1996, no writ); Greenwood v. Tillamook Country Smoker, Inc., 857 S.W.2d 654, 656 (Tex.
App.-Houston [1st Dist.] 1993, no writ). 

Texas Analysis

 In the Texas portion of our analysis, we must determine whether the parties have contracted
to "submit to a particular jurisdiction." In the present case, CMS contends the phrase "County and
State of the defendant" does not choose a particular jurisdiction. First, CMS argues the use of the
word "defendant" renders the clause unenforceable because it could include unknown parties, such
as assignees, and therefore the parties did not contractually consent to a particular jurisdiction. 
Second, CMS contends the clause is unenforceable even if "defendant" refers to Plumrose, because
"County and State of" is ambiguous and could encompass a multitude of jurisdictions. 

 When interpretation of a contract is in issue, courts must first determine whether the
provisions in question are ambiguous. Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983). When
determining whether a contract is ambiguous, this Court must examine the contract as a whole in
light of the circumstances existing at the time the contract was signed. Id. at 393. A contract is
ambiguous if, after examining the contract as a whole in light of the circumstances existing at the
time the contract was signed and after applying the rules of construction, its meaning is uncertain
and doubtful or it is reasonably susceptible to more than one meaning. Id. 

 In the present case, CMS contends the phrase "County and State of" is ambiguous because
it could refer to the county and state of defendant's principal place of business, its place of
incorporation, or any place it maintains a substantial presence through its agents or facilities. After
analyzing the terms of the agreement, however, this Court is able to give the phrase clear and definite
meaning. We believe the clause requires any CMS claim against Plumrose to be litigated in the
county and state of Plumrose's principal place of business. Our belief is rooted in our analysis of the
language of the sentence in question, Lenape Resources Corp. v. Tennessee Gas Pipeline Co., 925
S.W.2d 565, 574 (Tex. 1996); Sun Oil Co. v. Madeley, 626 S.W.2d 726, 731 (Tex. 1981), which
provides as follows:

 The laws in the State in which the defending party maintains business shall govern
the application and interpretation of this agreement, and all litigation pursuant to this
agreement shall be conducted in the County and State of the defendant. 


 That sentence selects both the applicable law and the forum. We, of course, seek the
meaning of the forum selection phrase. While we have not been called on to determine which state
law the choice of law provision applies to the case, understanding that phrase from the first part of
the sentence helps us properly understand the forum selection phrase contained in the remainder of
the sentence. See State Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995) (courts give
effect to writing by reading all parts of contract together, not isolating single phrase from other
provisions); Green Ave. Apartments, Inc. v. Chambers, 239 S.W.2d 675, 684-85 (Tex. Civ.
App.-Beaumont 1951, no writ) (terms used in one part of contract will be deemed to have same
meaning throughout, absent contrary evidence). 

 As it begins, the sentence makes applicable to the contract the law of "the State in which the
defending party maintains business." While that phrase is certainly capable of being improved, the
phrase clearly tries to select one single state as the jurisdiction to provide the controlling law. The
phrase uses "the State," not "any state." Thus, it cannot mean "many states" or "a state to be chosen
later from many." Logically, since the phrase continues with "in which the defending party
maintains business," that state must be, ultimately, where the defendant's principal place of business
is located. The language certainly makes no reference to the defendant's state of organization. And
since, as we have concluded, the phrase chooses one state only, choosing any state not containing
defendant's principal place of business is illogical, that is, contrary to the parties' apparent intent,
based on the language they chose to use.

 We now focus on the forum selection provision in the latter part of the sentence. CMS also
argues that, even if "County and State of" referred to the principal place of business, the use of the
term "defendant" renders the clause unenforceable because it could include unknown parties, such
as assignees, making it impossible to select a particular jurisdiction. When interpreting contracts,
the primary concern of this Court is to give effect to the parties' intentions as expressed in the
contract. Lenape Resources Corp., 925 S.W.2d at 574. In determining the parties' intentions, intent
must be taken from the agreement itself, not from the parties' present interpretation. Madeley, 626
S.W.2d at 731 (quoting City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518
(Tex. 1968)). The agreement will be enforced as the parties have made it, without regard to
whether they contracted wisely. Jamestown Partners, L.P. v. City of Fort Worth, 83 S.W.3d 376,
376 (Tex. App.-Fort Worth 2002, pet. denied). 

 At the time the contract was signed, CMS and Plumrose were the only two parties to the
contract. Accordingly, barring an assignment of the contract to another party, which did not happen
here, Plumrose must have been the defendant contemplated for any CMS claim when the parties
agreed to those terms. Because CMS's present interpretation is immaterial, and intent is taken from
the instrument itself, the term "defendant" clearly refers to either CMS or Plumrose. Madeley, 626
S.W.2d at 731

 Consequently, when the forum selection phrase is read in the context of the choice of law
phrase, contained in the same sentence, its meaning becomes clear, that is, the forum is to be located
in the county and state of the principal place of business of the party defendant, in this case,
Plumrose. Beaston, 907 S.W.2d at 433. Therefore, CMS was bound by the terms of the agreement
to bring this suit in Middlesex County, New Jersey, unless New Jersey would not enforce the clause. (1)

New Jersey Analysis 

 New Jersey courts have consistently held that forum selection clauses are generally
enforceable unless: (1) they are the result of fraud or coercive bargaining power, (2) enforcement
of the clause would set trial in a seriously inconvenient place, that is, a place that would effectively
deny a party his or her day in court, or (3) the parties had inadequate notice of the jurisdiction the
clause would select and thus enforcement would be unreasonable. Copelco Capital v. Shapiro, 750
A.2d 773, 775 (N.J. Super. Ct. App. Div. 2000); Caspi v. Microsoft Network, L.L.C., 732 A.2d 528,
532 (N.J. Super. Ct. App. Div. 1999); Shelter Sys. Group Corp. v. Lanni Builders, Inc., 622 A.2d
1345, 1346 (N.J. Super. Ct. App. Div. 1993). As the third test appears to be the only arguable (or
at least the only argued) uncertainty, we address that issue.

 Two of the above cases are particularly instructive in this connection. In Copelco Capital,
the forum selection clause was held unenforceable. Copelco Capital, 750 A.2d at 774-76. Shapiro
leased a copier from American Business Credit Corporation with a lease containing a forum
selection clause which provided in pertinent part: "You consent to the jurisdiction of any local, state,
or federal court located within our or our assignee's state . . . ." Id. at 775. The original lessor
assigned the lease to Copelco, and subsequently, Shapiro failed to make the scheduled payments
under the lease. Copelco brought suit in New Jersey pursuant to the forum selection clause, and
Shapiro contended the clause was unenforceable. Because the clause included "assignee's," the court
reasoned that the proper forum could be in any state in the country, defeating the objective of forum
selection clauses, which is to ensure a predictable and neutral locus for the resolution of any dispute.
The court also reasoned that a clause providing for a forum that could not be identified until
sometime after the agreement was entered into would violate the notice requirement and render the
clause unfair and unreasonable. Accordingly, by virtue of including the term "assignee's," the clause
was unenforceable. Id. 

 In contrast, the court upheld the forum selection clause in Shelter System Group Corp. The
clause in question provided: "Any actions, claims or suits . . . arising out of or relating to this
Contract, or the alleged breach thereof, shall be brought only in courts located in the State where
Seller's principal place of business is located." Shelter Sys. Group Corp., 622 A.2d at 1346-47. 
Shelter complained the clause was unenforceable because they never knew where the seller's
principal place of business was. The court, however, found that Shelter was in possession of facts
alerting it that the seller's principal place of business was in New Jersey. Specifically, the court
found that Shelter was in possession of the seller's letterhead that expressly identified New Jersey
as its principal place of business. Accordingly, the court held that enforcement of the clause would
not result in surprise or prejudice, nor would it be unfair or unreasonable. Id.

 We believe the present case is more nearly like Shelter Systems Group Corp., since the New
Jersey forum could not reasonably be a surprise to either party here. CMS analogizes the present
case to Copelco Capital and argues that, because this contract could be assigned, as the Copelco
Capital contract was, the defendant and the jurisdiction could not be determined until suit was
brought. Based on that interpretation, CMS argues the clause fails to give adequate notice of the
particular jurisdiction as required by New Jersey law. Copelco Capital, 750 A.2d at 775.

 While the contract before us is assignable, the present case is distinguishable from Copelco
Capital. Because the present contract was not assigned, and Plumrose was the defendant, the terms
of contract dictated that suit be brought in New Jersey, a forum reasonably within the contemplation
of the parties. In contrast, the Copelco Capital contract expressly provided that any lawsuit would
be litigated in "our or our assignee's state." Id. at 775. Further, that contract was assigned, thus
selecting a forum not within the reasonable contemplation of those parties. Id. If in the present case
the contract had been assigned, this Court might be forced to a different conclusion. Because the
facts of this case do not involve assignees, however, CMS had adequate notice that New Jersey
would be the proper forum for any CMS claim. Thus, enforcing the clause is not unreasonable.

 CMS also argues that "County and State of" renders the clause unenforceable because it could
include several different forums, such as its state of incorporation, its principal place of business, or
any other forum where it might conduct business. As previously discussed, however, the proper
inquiry is whether CMS was given adequate notice of the chosen forum so enforcing the clause
would not be unfair or unreasonable. Id. In Shelter Sys. Group Corp., the court held that Shelter had
access to facts that would have made them aware of the seller's principal place of business at the time
of contract and no surprise would result from enforcing the clause. Shelter Sys. Group Corp., 622
A.2d at 1347. We believe CMS is chargeable with knowledge of the logical conclusion of the clause
in question, that the state selected is that of the principal place of business of the party defendant,
Plumrose, which is Middlesex County, New Jersey.

 CMS certainly had access to information at the time of the contract that should have put them
on notice of New Jersey's potential involvement. (2) Further, when the contract was signed, CMS was
in possession of documents indicating, and in any event it must have been easily discoverable, that
Plumrose's principal place of business was in Middlesex County, New Jersey.

 For venue purposes, in New Jersey the residence of a corporation must be determined not by
the residence of any particular office or officer, but by the principal office of the corporation or its
place of incorporation. (3) Am. Employers' Ins. Co. v. Elf Atochem N. Am., Inc., 725 A.2d 1093, 1098
(N.J. 1999). Additionally, parties may be held chargeable not only with knowledge of the meaning
of the terms used in the contract, but also with the legal implications of the contract created using
those terms. See N. J. Bank v. Palladino, 389 A.2d 454 (N. J. 1978) (agreement having more than
one possible meaning, one legal and other illegal, former will be preferred). By examining the
contract in light of the circumstances at the time it was signed and applying rules of contract
construction, this Court must conclude that CMS had knowledge, or was on notice, that the logical
implication of the language used in the forum selection clause would require suit to be brought
against Plumrose in New Jersey because that is where its principal place of business is located. See
Elf Atochem N. Am., Inc., 725 A.2d at 1098; Palladino, 389 A.2d at 461. 

 Therefore, for all of the above reasons, we expect a New Jersey court would enforce the
forum selection clause at issue in this case. Thus, we find it enforceable.

Findings of Fact and Conclusions of Law 

 Rule 296 of the Texas Rules of Civil Procedure provides in pertinent part: "In any case tried
. . . without a jury, any party may request the court to state in writing its findings of fact and
conclusions of law." Tex. R. Civ. P. 296. It has been well established, however, that findings of fact
and conclusions of law are unnecessary when the trial court has decided the case based solely on the
pleadings and arguments of counsel. IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp., 938 S.W.2d 440,
443 (Tex. 1997); Awde v. Dabeit, 938 S.W.2d 31, 33 (Tex. 1997). For example, in Awde, the Texas
Supreme Court held that, because the trial court dismissed the cause for want of jurisdiction based
on the pleadings and arguments of counsel, rather than sworn testimony, findings of fact and
conclusions of law were not required and would have been of no use to the appellate court. Awde,
938 S.W.2d at 33.

 Unlike Awde, in Davis the court held that a trial on the merits had taken place and that
findings of fact and conclusions of law were required pursuant to a proper request. Davis v. State,
904 S.W.2d 946, 949 (Tex. App.-Austin 1995, no writ) (holding that under Rule 296 of Texas Rules
of Civil Procedure, "tried to a court without a jury" includes either an evidentiary hearing or a trial
on merits). In Davis, factual evidence was orally stipulated in a proceeding before the trial court,
and one exhibit was introduced and entered into evidence. The appellate court held the proceeding
constituted a trial on the merits despite its brevity and despite stipulation of the facts. Because that
constituted a trial, the appellate court held the case had been tried without a jury, and the trial court
was required to issue findings of fact and conclusions of law. Id.

 In the present case, the trial court granted Plumrose's plea in abatement and motion to dismiss
based on "the Plea and Motion, all responsive pleadings, the evidence before the Court, and the
arguments of counsel." The record contains the parties' pleadings and John A. Arends' affidavit.
CMS contends a hearing was held by the trial court prior to ordering dismissal, but, unlike Davis,
there is no evidence in the record of any hearing. See Zimmerman v. Robinson, 862 S.W.2d 162, 164
(Tex. App.-Amarillo 1993, no writ) (dismissed complaint where there had been no evidentiary
hearing imposes no duty on the trial court to file findings of fact or conclusions of law). Further, in
Awde, the Texas Supreme Court held that findings of fact and conclusions of law were of no use to
an appellate court when the trial court considered the motion based solely on pleadings and
arguments of counsel. Awde, 938 S.W.2d at 33. Though Arends' affidavit was part of the basis for
the trial court's ruling, there was apparently no factual dispute resolved in that ruling. Accordingly,
the trial court was under no duty to file findings of fact and conclusions of law, and we overrule
CMS's point of error.

 Even if the motion had been tried to the court, we could not sustain CMS's point of error if
the record affirmatively shows CMS suffered no injury as a result. Tenery v. Tenery, 932 S.W.2d
29, 30 (Tex. 1996); Cherne Indus., Inc. v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989). Where,
as here, the facts are undisputed and the only matters presented on appeal are legal issues, which are
reviewed de novo, the failure to file findings of fact and conclusions of law is harmless error. 
Hopkins v. NCNB Tex. Nat'l Bank, 822 S.W.2d 353, 355 (Tex. App.-Fort Worth 1992, no writ). 

 In the present case, interpretation and enforceability of the forum selection clause were the
only issues presented on appeal, which are legal matters this Court reviews de novo. Fisk Elec. Co.
v. Constructors & Assocs., Inc., 888 S.W.2d 813, 814 (Tex. 1994). Even if the trial court's failure
to file findings of fact and conclusions of law was error, it did not prevent CMS from adequately
presenting its points before this Court, and the record before this Court affirmatively shows that
CMS suffered no injury. 

 For the reasons stated, we affirm the trial court's judgment.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: January 16, 2003

Date Decided: March 20, 2003


1. Clearly, the better practice would be to expressly name the parties and the jurisdiction or
jurisdictions in which venue will be proper, but we will not hold the provision invalid because of
poor drafting if we can assign clear meaning to the terms and give effect to the parties' intent. 
2. Plumrose's president, John Arends, filed an affidavit stating that he negotiated the contract
with CMS and that they were aware of Plumrose's principal place of business. Further, CMS was
in possession of Plumrose's letterhead that gives New Jersey as its corporate address. 
3. At no time was Plumrose's principal place of business or place of incorporation located in
Texas.