NUMBER 13-04-419-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

BROWNSVILLE ADVANCED MEDICAL IMAGING, L.P.,     Appellant,

 

                                            v.

 

CAPITALWERKS,
LLC D/B/A PREFERRED LEASE,             Appellee.

 

 

 

                  On appeal from the 139th
District Court

                            of Hidalgo
County, Texas.

 

 

 

                     MEMORANDUM OPINION[1]

 

              Before Justices Rodriguez,
Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








Based on a forum selection clause, the trial court
granted a motion to dismiss  in favor of
appellee, CapitalWerks, L.L.C. d/b/a Preferred Lease, and against appellant
Brownsville Advanced Medical Imaging, L.P. ("Brownsville Imaging").[2]  By one issue, Brownsville Imaging asserts
dismissal was improper.  We reverse and
remand.  

I.  BACKGROUND

CapitalWerks filed a motion to dismiss, asserting
the parties agreed that all disputes arising from the contract between them
would be resolved in a California state or federal court.  CapitalWerks requested that the trial court
decline to exercise jurisdiction and dismiss the case pursuant to section
15.020(b) of the Texas Civil Practice and Remedies Code.  Tex.
Civ. Prac. & Rem. Code Ann. ' 15.020(b) (Vernon 2002).  Brownsville Imaging responded that section
15.020(b) did not apply because the forum selection clause was contained in an
instrument CapitalWerks "never accepted."  

II. FORUM SELECTION CLAUSEBSTANDARD AND SCOPE OF REVIEW








In Texas, forum selection clauses are enforceable
provided (1) the parties have contractually consented to submit to a particular
jurisdiction, and (2) the other state recognizes the validity of such provisions.  CMS Partners, Ltd. v. Plumrose USA, Inc.,
101 S.W.3d 730, 732 (Tex. App.BTexarkana 2003, no pet.).  When a trial court denies a motion to enforce
a valid, enforceable forum‑selection clause that specifies another state
or country as the chosen forum, the trial court's final judgment is subject to
automatic reversal at the request of the party seeking enforcement of the
clause.  In re AIU Ins. Co., 148
S.W.3d 109, 118 (Tex. 2004).  A trial in
a forum other than that contractually agreed upon will be a meaningless waste
of judicial resources.  See id.  The error is not harmless.  Id.

We review de novo a trial court's application of the
law to the facts to determine the correctness of the trial court's legal conclusions.  BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002).  We are
not obligated to give any particular deference to those conclusions.  Pegasus Energy Group v. Cheyenne Petroleum
Co., 3 S.W.3d 112, 121 (Tex. App.BCorpus Christi 1999, pet. denied).  As the final arbiter of the law, we have the
power and the duty to evaluate legal determinations of the trial court
independently.  Id.

III.  THE
AGREEMENTS

At the heart of the parties' dispute is the lease to
purchase imaging equipment.  The parties
essentially disagree on (1) which instrument controls the disposition of this
appeal, and (2) whether CapitalWerks accepted a lease agreement on February 19,
2003, and notified Brownsville Imaging of its acceptance.  Brownsville Imaging sued CapitalWerks for
breach of contract and for deceptive trade practices alleging, in part, that
CapitalWerks breached an agreement by "failing to approve and tender the
lease and equipment." 

 








A. 
Brownsville Imaging:  The Proposal
For a Lease ("Letter Agreement")

Brownsville Imaging asserts that the agreement
attached to Brownsville Imaging's live pleading controls.  The instrument states as follows, in
pertinent part:

Preferred Lease[3]

February 7, 2003

 

[Brownsville Advanced Medical Imaging LP

Address]

 

Dear [General Partner],

 

Capital Werks, L.L.C. dba Preferred Lease
(CapitalWerks) is pleased to submit the following proposal for a lease
transaction with [Brownsville Imaging] (hereinafter referred to as
"Lessee"). . . .

 

Equipment:                   Used GE Imaging Machine, Scanners,
etc.

Line Amount:                $1,500,000.00

Term:                           66 months . . .

First and Last Payment:  $63,930.46 . . .

Documentation Fee:      $1,500.00 . . .

. . . 

This transaction is subject to a final due diligence
of the Lessee and approval by the appropriate officers of CapitalWerks.  CapitalWerks will notify the Lessee in
writing of its approval.  This
transaction, if approved, is contingent upon the successful execution of all
required final documentation, including Master Lease, Addendums, and Schedules.


 

Upon receipt of an executed copy of this letter
along with the required check in the amount of $65,430.46, CapitalWerks will
finalize its due diligence of this transaction. 
This letter will remain in effect until the close of business on
February 15, 2003.  

. . .

We at CapitalWerks, L.L.C. dba Preferred Lease look
forward to pursuing  a mutually
beneficial relationship. . . . 








The Letter Agreement is dated February 7, 2003, and
signed by CapitalWerks's commercial account manager.  Brownsville Imaging's general partner signed
on the line marked "accepted by." 
Brownsville Imaging asserts that CapitalWerks breached the agreement by
failing to approve and tender the actual lease agreement and equipment.  CapitalWerks counters that it accepted the
lease and timely provided the "Lease Agreement" to Brownsville
Imaging. 

B. 
CapitalWerks:  The "Lease
Agreement"

1. The two-page instrument

CapitalWerks argues that, on February 7, 2003,
Brownsville Imaging and CapitalWerks signed and, thus, entered into both the
Letter Agreement and the actual "Lease Agreement."  CapitalWerks further argues that the Letter
Agreement to lease "provides for a letter of credit for [Brownsville
Imaging]" and, thus, the forum selection clause in the Lease Agreement
controls.  CapitalWerks relies on an
instrument, which it refers to as the Lease Agreement, that bears the company
name and address.  The instrument
identifies Brownsville Imaging as the lessee. 
The "supplier of the equipment" is not identified.  Under a heading for "Description of
Equipment Leased," the following language is provided:  "Equipment description as delineated on
separate invoice, shall be attached hereto and made a part hereof upon receipt
of final invoicing."  The instrument
contains the following paragraph above the signature of Brownsville Imaging's
managing partner:

GUARANTY








. . . THIS GUARANTY AND ALL TRANSACTIONS UNDER THIS
GUARANTY, AND ALL RIGHTS AND LIABILITIES OF EACH OF THE GUARANTORS, WILL BE
DETERMINED AND GOVERNED AS TO VALIDITY, INTERPRETATION, ENFORCEMENT AND EFFECT
BY THE INTERNAL LAWS OF THE STATE OF CALIFORNIA.  EACH OF THE GUARANTORS AGREES THAT ALL
ACTIONS AND PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY FROM THIS GUARANTY MAY
BE LITIGATED, AT THE LESSOR'S ELECTION AND EACH OF THE GUARANTORS AGREES THAT
ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF CALIFORNIA SHALL HAVE
PERSONAL JURISDICTION OVER EACH OF THEM. 
EACH OF THE GUARANTORS AGREES THAT IF ANY ACTION IS BROUGHT TO ENFORCE
THIS GUARANTY, ORANGE COUNTY SHALL BE A PROPER PLACE FOR THE TRIAL.  EACH OF THE GUARANTORS WAIVES ITS RIGHT TO
HAVE ANY PROCEEDINGS ARISING OUT OF OR RELATING TO THIS GUARANTY TRIED BY JURY.

 

The instrument bears the signature of Brownsville
Imaging's managing partner again under the heading "Delivery and
Acceptance Acknowledgment" as "Lessee."  At the same location is a signature of CapitalWerks's
funding manager.  Below is a paragraph addressing
the terms of acceptance:








(2) 
ACCEPTANCE:  We agree to lease to
you, and you agree to lease from us, the equipment, items, products, software,
services, and other personal property described or referenced above and
as modified by supplements to this Master Agreement ("Equipment") for
the term shown above ("Initial Term").[4]  We shall have no obligations hereunder
until we accept and sign this Agreement at our offices.  If this Agreement is executed by you and
thereafter sent to us by facsimile transmission, then until such time as we
have received the Agreement with your manual signature thereon, such facsimile
transmission shall constitute, upon acceptance and execution by us in our
offices, the original Agreement and chattel paper and shall be admissible for
all purposes as the original Agreement. 
You agree to promptly forward to us the Agreement with your manual
signature thereon and upon receipt by us, the Agreement with your manual
signature thereon shall constitute the chattel paper in lieu of such facsimile
transmission.  You agree that the
terms and conditions contained on both pages hereof are the complete and
exclusive statement of our agreement and they may be modified only by
written agreement signed by all of the parties hereto and not by course of
performance.  You agree that the original
of this Agreement may be microfilmed or electronically duplicated and a photo
static copy of such microfilm or electronic duplication may be presented in
lieu of the original thereof and without further foundation.  The parties hereto expressly waive the
secondary evidence rule.  You acknowledge
receipt of your copy of this agreement.

 

3)  TERM.  This Agreement will become effective when
we accept the Agreement at our principal office.  The Agreement will terminate on the date
when you have paid and performed all of your obligations under the Agreement in
accordance with the terms of the Agreement. 
Your obligation to pay rent and all other sums due under this Agreement
is absolute and unconditional and not subject to abatement, reduction or set-off
and you will make all payments to us under this Agreement promptly when due and
irrespective of any claim or other right that you may have against us or the
manufacturer, seller and/or supplier of the Equipment or any other party.  YOU MAY NOT CANCEL THIS AGREEMENT.

Page 1 of 2

TERMS AND CONDITIONS CONTINUES ON PAGE 2 OF 2[5]

(Italics added).

2.  The first
attachmentBa payment schedule








The attached payment schedule identifies
"Preferred Lease, A CapitalWerks Company" and is titled
"Purchase Agreement."  The
payment schedule bears the signature of Brownsville Imaging's managing partner
and is dated February 7, 2003.  It also
shows the signature of the funding manager of and "accepted by"
Preferred Lease.  Brownsville Imaging
denied below and now on appeal that it ever received the "Purchase
Agreement," and argues that CapitalWerks failed to provide notice of
acceptance as required by the letter agreement. 
Further, Brownsville Imaging argues that the instrument is not dated,
and, thus, the date of acceptance is presumptively beyond the February 15, 2003,
deadline and of no legal effect.[6]

3.  The second
attachmentBan equipment description

A schedule "A," also attached to the
"Lease Agreement," bears the heading "Equipment
Description;" that portion of the document is blank.[7]  The Lease number is also blank.  Brownsville Imaging's managing partner signed
the document. 

4.  The third
attachmentB"Purchase Agreement"

The third attachment states, in part:

That certain lease Schedule entered into by and
between Preferred Lease, a CapitalWerks Company as Lessor and [Brownsville
Imaging] as Lessee dated _________, in consideration of the mutual covenants
herein contained and upon having met all the terms and conditions of the Lease
Agreement and for other good and valuable consideration, is hereby amended to
include the following:

. . . 

 








Within 15 days after receipt of the Purchase Price,
Lessor shall execute and deliver to Lessee a Bill of Sale for the Equipment,
"AS IS" and "WHERE IS", in its then condition and its then
location, without any warranty or representation by or recourse against the
Lessor.

 

. . . 

IN WITNESS WHEREOF, the parties hereto have duly
executed this Agreement as of the date first shown above.  Please be further advised that this document
will be null and void unless executed by an officer of Preferred Lease, A
CapitalWerks Company.

 

The attachment is signed by the general partner for
Brownsville Imaging.  The signature for
CapitalWerks appears to be the signature of its funding manager.  There is no "date first shown
above."

5.  The fourth
attachmentBBrownsville Imaging's checks

CapitalWerks also attached copies of two checks from
Brownsville Imaging.  The first, in the
amount of $63,930.46, is for the first and last payment on the lease.  The second, in the amount of $1,500.00, is
for the documentation fee.[8]

C.  Common
Elements

The signature of Brownsville Imaging's managing
partner appears on all documents.  The
signature on the Letter Agreement on behalf CapitalWerks is by a commercial
account manager.  The signatures on the
Lease Agreement and attachments for CapitalWerks appear to be by its funding
manager.  Only the Letter Agreement is
dated.  The Letter Agreement remained
"in effect until the close of business on February 15, 2003."  

 








IV.  THE
AFFIDAVITS

Both parties attached evidence to their respective
pleadings concerning the issue of forum non conveniens before the trial
court.  Along with the instruments each
extolled as the controlling "agreement," each party attached an
affidavit.

A. 
CapitalWerks's Affidavit:

James Raeder, President and Custodian of Records

 

Attached to Raeder's affidavit was a copy of the
Letter Agreement.  Raeder stated:

Capitalwerks, L.L.C. d/b/a Preferred Lease entered
into a lease contract with plaintiff which plaintiff attached as Exhibit 1 to
Plaintiff's Original Petition and forms the basis of plaintiff's lawsuit and
causes of action against Capitalwerks, L.L.C. d/b/a Preferred Lease
("Contract").  I have attached
a copy of the Contract as Exhibit "A-1" to this affidavit.  The Contract is a record of acts and
conditions made at or near the time by or from information transmitted by, a
person with knowledge of the acts, events or conditions.  This bond is kept in the course of the
regularly conducted business of Captialwerks, L.L.C. d/b/a Preferred Lease and
it is the regular practice of Capitalwerks, L.L.C. d/b/a Preferred Lease to
make a record of this contract.  

 

Attached to the affidavit as Exhibit A-1 was the
Letter Agreement.  Though the Lease
Agreement and its three attachments are identified as Exhibit A-2, Raeder did
not address these documents in his affidavit.

B. 
Brownsville Imaging's Affidavit: 
Attorney Sameer Ahmed 

 








As part of its response to CapitalWerks' motion to
dismiss, Brownsville Imaging attached (1) the Letter Agreement, (2) the Lease
Agreement (two pages without attachments), and (3) the affidavit of its
attorney, Sameer Ahmed.  Ahmed attested
he "participated in the negotiations for the February 7, 2003 Proposal For
A Lease Transaction [the Letter Agreement]."  Ahmed further attested that "Brownsville
Imaging never received any oral or written notification of any approval by
Capitalwerks of the [Letter Agreement] as required by the February 7, 2003
[Letter Agreement] between Brownsville Imaging and Capitalwerks."

C.  The Order
and Appeal

The trial court granted CapitalWerks's motion to
dismiss without prejudice.  This appeal
ensued.  By its first issue, Brownsville
Imaging contends that the trial court committed reversible error by enforcing
an unenforceable forum selection clause. 
Essentially, Brownsville Imaging argues that the trial court bound it to
a forum selection clause that was not enforceable because CapitalWerks never
notified Brownsville Imaging that CapitalWerks had accepted the Letter
Agreement, a condition precedent to finalizing the lease-to-purchase Lease
Agreement, which contained the forum selection clause.  

V.  DISCUSSION

CapitalWerks asserted section 15.020(b) of the civil
practice and remedies code as grounds for dismissal in its motion.  Tex.
Civ. Prac. & Rem. Code Ann. ' 15.020(b) (Vernon 2002).  The section states, in part, "An action
arising from a major transaction shall be brought in a county if the party
against whom the action is brought has agreed in writing that a suit arising
from the transaction may be brought in that county."  See id.  The question squarely before us is whether the
parties contractually agreed in writing that the action would be brought in
Orange County, California.  








We have reviewed the Letter Agreement and the Lease
Agreement.  The Letter Agreement, in
effect until February 15, 2003, required CapitalWerks to "finalize its due
diligence of this transaction" upon receipt of an executed copy of the
letter and a check in the amount of $65,430.46. 
The parties do not dispute that Brownsville Imaging executed the letter
or that it made the required payment. 
Alleging that CapitalWerks breached the Letter Agreement, Brownsville
Imaging filed suit on February 20, 2004. 
CapitalWerks argues on appeal that the Letter Agreement "provides
for a letter of credit for [Brownsville Imaging]."  Because Brownsville Imaging does not
contradict the assertion, we will accept it as true.  See Tex.
R. App. P. 38.1(f).  Thus, in
essence, Brownsville Imaging's breach of contract claim is based on the failure
of CapitalWerks to either approve or communicate its approval of a line of
credit a year after the parties executed the Letter Agreement, coupled with the
failure to deliver any of the equipment. 
The Letter Agreement, the sole document bearing a date of signing, does
not contain a forum selection clause. 
The Letter Agreement does require that CapitalWerks "finalize its
due diligence of this transaction" and execute the Lease Agreement by
February 15, 2003.  Most compelling is
that the Letter Agreement states: 

This transaction is subject to a final due diligence
of the Lessee and approval by the appropriate officers of CapitalWerks.  CapitalWerks will notify the Lessee in
writing of its approval.  This
transaction, if approved, is contingent upon the successful execution of all
required final documentation, including Master Lease, Addendums, and Schedules.

 








The Letter Agreement is not ambiguous.[9]  The Letter Agreement required CapitalWerks to
use due diligence and notify Brownsville Imaging "in writing of its
approval" by the indicated deadline.[10]  The sole evidence before the trial court was
Brownsville Imaging's counsel's affidavit, attesting that "Brownsville
Imaging never received any oral or written notification of any approval by
Capitalwerks of the [Letter Agreement] as required by the [Letter
Agreement]."  Though controvertible,
CapitalWerks did not controvert this statement. 


The Lease Agreement, together with its attachments,
is incomplete in several respects.  Among
other things, (1) the instruments are not dated, (2) the equipment is not
described (as required in Schedule ABsecond attachment), and (3) there is no final invoice
indicating either the equipment being purchased or the price of such equipment
and any attendant financing charge.  The
sole evidence before the trial court was that CapitalWerks did not (1) use due
diligence to finalize the transaction, (2) successfully execute all required
final documentation, or (3) notify Brownsville Imaging "in writing of its
approval," as the parties agreed in the Letter Agreement.  








We have reviewed the Lease Agreement and its
attachments.  It is the Lease Agreement
that contains the forum selection clause made the basis of CapitalWerks's
dismissal motion.  We have concluded the
instrument is incomplete.  The evidence
shows that, after almost a year, Brownsville Imaging sued because  it had not received written (or oral) notice
of CapitalWerks's acceptance.  Thus, the
Lease Agreement is, at best, an executory contract.  See Lee v. Cherry, 812 S.W.2d 361, 364
(Tex. App.BHouston [14th Dist.] 1991, writ denied) ("An
executory contract is one that is unperformed by both parties or one with
respect to which something still remains to be done on both sides."); B.L.
Nelson & Assocs. v. City of Argyle, 535 S.W.2d 906, 909 (Tex. Civ. App.BFort Worth 1976, writ ref'd n.r.e.) ("An
executory contract is one that is still unperformed by both parties or one with
respect to which something still remains to be done on both sides.").  By its terms, the Lease Agreement requires
Brownsville Imaging to make periodic payments ("Purchase Agreement"Bfirst attachment) upon CapitalWerks's approval of a
line of credit for a lease of "used GE Imaging Machine, Scanners,
etc." (Letter Agreement).  We
conclude Brownsville Imaging was not bound by the terms of an executory
contract, much less by a forum selection clause within the same executory
instrument. 








Implied in the trial court's order is that it
enforced the forum selection clause in the Lease Agreement, the sole instrument
that contains the clause.  Because the
Lease Agreement is executory, the forum selection clause is unenforceable.  See CMS Partners, Ltd., 101 S.W.3d at
732.  Thus, the order dismissing
Brownsville Imaging's case is unsupported as a matter of law.[11]
 We also conclude that Brownsville Imaging was
harmed by the dismissal of its lawsuit, which was properly filed in a court of
competent jurisdiction and in a proper venue. 
Tex. Gov't Code Ann. __ 24.007, 24.008 (Vernon
2004); Tex. Civ. Prac. & Rem. Code
Ann. _ 15.002(a)(4) (Vernon 2002).  Accordingly, we sustain Brownsville Imaging's
sole issue presented. 

VI.  CONCLUSION

Because we sustain
Brownsville Imaging's issue, we reverse and remand for proceedings consistent
with this opinion  

ERRLINDA CASTILLO

Justice

 

Memorandum
Opinion delivered and filed

this
the 11th day of August, 2005.

 











[1] See Tex. R.
App. P. 47.2, 47.4.





[2] "CapitalWerks" is referred
to in the various documents in the appellate record as "Capital
Werks," "Capitalwerks," and "CapitalWerks."  For ease of reference, we refer to appellee
as "CapitalWerks."

 

 





[3] Other documents attached as
exhibits to CapitalWerk's motion to dismiss show that "Preferred
Lease" is a "CapitalWerks Company."  





[4] The "initial term" box
shows "66," explained as the total number of payments and itemized in
the "Purchase Agreement" attached to the instrument.





[5] Page 2 contains terms including a
forum clause: 

 

4) 
CONSENT TO JURISDICTION AND CHOICE OF LAW.  This Agreement shall be interpreted and all
rights and liabilities of you and us hereunder shall be determined, interpreted,
governed and enforced according to the Laws of the State of California or the
home state of whoever holds the Lessor's interest as it may be assigned from
time to time per paragraph 20.  Without
limiting our right to bring action against you in any Court of competent
Jurisdiction, you hereby irrevocably submit to the Jurisdiction of any State
[or] Federal Court located in California. 
You and we hereby waive any right to a [trial] by Jury.





[6] Brownsville Imaging argues that it
first received notice of acceptance on the date it received a copy of
CapitalWerks's motion to dismiss, because the acceptance was attached to the
motion as an exhibit. 





[7] The document's sole paragraph
states, "This Schedule 'A' is attached to and part of the Lease between
Preferred Lease, A CapitalWerks Company, and Brownsville Advanced Medical
Imaging, L.P. (Lessee) and constitutes a true and accurate description of the equipment
for Preferred Lease, A CapitalWerks Company Lease No. ______."





[8] A copy of Brownsville Imaging's
managing partner's driver's license was also attached.





[9] If a written contract is so worded
that it can be given a definite or certain legal meaning, then it is not
ambiguous.  Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983).





[10] Courts should give terms their
plain, ordinary, and generally accepted meaning unless the contract indicates
otherwise.  Heritage Res., Inc. v.
NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). Courts are to construe
technical words and terms in a contract as those terms are usually understood
by persons in the profession or business to which the terms relate, unless it
is clear that the terms were used in a different sense.  Oil Ins. Ass'n v. Royal Indem. Co.,
519 S.W.2d 148, 150 (Tex. Civ. App.BHouston [14th Dist.] 1975, writ ref'd n.r.e.); Frost v.
Martin, 203 S.W. 72, 74 (Tex. Civ. App.BFort Worth 1918, no writ). 
When interpreting contracts, the primary concern is to give effect to
the parties' intentions as expressed in the contract.  CMS Partners, Ltd. v. Plumrose USA, Inc.,
101 S.W.3d 730, 733 (Tex. App.BTexarkana 2003, no pet.). 
In determining the parties' intentions, intent must be taken from the
agreement itself, not from the parties' present interpretation.  Id. The agreement will be enforced as
the parties have made it, without regard to whether they contracted
wisely.  Id. 





[11] To
establish an abuse of discretion, an appellant must show the trial court's
actions were arbitrary or unreasonable in light of all the circumstances.  Jackson v. TDCJ-ID, 28 S.W.3d 811, 813
(Tex. App.CCorpus
Christi 2000, pet. denied) (citing Smithson v. Cessna Aircraft Co., 665
S.W.2d 439, 443 (Tex. 1984)).  The
standard is clarified by asking whether the trial court acted without reference
to any guiding rules or principles.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985); Spurlock v. Schroedter, 88 S.W.3d 733,
735‑36 (Tex. App.BCorpus
Christi 2002, no pet.).  That
CapitalWerks asserted forum non conveniens as grounds for its motion to dismiss
does not compel a different result.  See
Tex. Civ. Prac. & Rem. Code Ann.
'
75.051 (Vernon Supp. 2004‑05).  The
trial court granted the dismissal motion on the forum non conveniens contention.  We review a forum non conveniens
determination for an abuse of discretion. 
See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 511 (1947); In re
Smith Barney, 975 S.W.2d 593, 596 (Tex. 1998).  Our review of the record de novo establishes
that CapitalWerks did not show itself entitled to dismissal on forum non
conveniens grounds.  See id.; Flaiz
v. Moore, 359 S.W.2d 872, 874‑75 (Tex. 1962) ("Factors relevant
to an FNC determination include:  (1)
private interests, such as relative ease of access to sources of proof; and (2)
public interests, such as administrative difficulties for the courts.  Unless the balance of factors strongly favors
the defendant, the plaintiff's choice of forum should rarely be disturbed."
(citations omitted)).