**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-11123

XTRIA LLC

Plaintiff - Appellant

v.

TRACKING SYSTEMS INC

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, DeMOSS, and PRADO, Circuit Judges.

DeMOSS, Circuit Judge:[*]

This contract case, governed by Texas law, requires the Court to determine whether a settlement agreement between Xtria LLC ("Xtria") and Tracking Systems, Inc. ("Tracking Systems") is ambiguous. Because the district court erroneously concluded that the agreement is ambiguous, we reverse and remand.

I.

Tracking Systems sold Xtria a data management system known as the eLiens Notification System. As part of their sales agreement, Xtria agreed to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

pay Tracking Systems a portion of any profit Xtria received if it resold the eLiens system. Later, in an effort to market the eLiens system, Xtria entered into a sales representation agreement with Tracking Systems' affiliate International Insurance Alliance, Inc. ("IIAI"). Pursuant to their agreement, IIAI was to act as Xtria's non-exclusive sales agent in exchange for commissions.

In 2005, Xtria sold the eLiens system, triggering Xtria's obligation to pay Tracking Systems a portion of the profits. A dispute soon arose between the parties as to the amount Xtria owed pursuant to their sales agreement. After mediation, the parties entered into a "Settlement Agreement and Release" (the "Settlement Agreement"). That agreement is the subject of this dispute.

Under the Settlement Agreement, "TSI" released, covenanted not to sue and forever discharged Xtria "from and against all manner of action . . . relating to or arising from (i) the TSI-Xtria Agreement, and/or (ii) any oral or other written agreement between TSI and Xtria entered into prior to the Effective Date." TSI was defined under the agreement to include Tracking Systems and its affiliates. However, only Tracking Systems and Xtria were parties to the agreement.

After the effective date of the Settlement Agreement, IIAI filed an arbitration proceeding against Xtria alleging that Xtria breached their sales representative agreement. Xtria demanded that Tracking Systems cause IIAI to dismiss the arbitration pursuant to the Settlement Agreement. Tracking Systems refused. Consequently, Xtria sued Tracking Systems for breach of the Settlement Agreement.

In its complaint, Xtria reasoned that because IIAI was an affiliate of Tracking Systems, the Settlement Agreement released Xtria from all liabilities arising from the agreement between Xtria and IIAI and provided a covenant that IIAI would not sue Xtria. Xtria alleged that Tracking Systems breached the Settlement Agreement by allowing IIAI to initiate and maintain the arbitration

proceeding against Xtria. Tracking Systems moved to dismiss alleging that Xtria stated a claim against IIAI but had failed to state a claim for breach of contract against Tracking Systems. Tracking Systems surmised that it had no duty under the contract to prevent IIAI from initiating a suit against Xtria. In deciding the motion to dismiss, the district court determined that the Settlement Agreement was ambiguous. The court found that the Settlement Agreement could be construed to impose an obligation on Tracking Systems to prevent IIAI from initiating or maintaining an arbitration proceeding. But, the agreement could also be construed to provide a defense for Xtria against any claim by IIAI, rather than an affirmative obligation on Tracking Systems to control its affiliate.

The matter proceeded to a bench trial to determine whether the parties intended for Tracking Systems to prevent its affiliates from initiating, or to cause its affiliates to dismiss, a suit against Xtria. The district court found that Xtria failed to prove that the parties intended for Tracking Systems to control IIAI and thus, failed to prove breach of the Settlement Agreement. Xtria appealed the district court's judgment in favor of Tracking Systems.

## II.

The question before the Court is whether the Settlement Agreement between Xtria and Tracking Systems is ambiguous. "Whether a contract is ambiguous is a question of law for the court to decide." *Barnard Constr. Co. v. City of Lubbock*, 457 F.3d 425, 428 (5th Cir. 2007) (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). Accordingly, we review the question of whether the contract is ambiguous *de novo*. *Id*. at 427.

Settlement agreements are subject to the general principles of contract construction. *See Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006). In interpreting a contract, a court's primary concern is ascertaining the parties' intent. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If a contract "is so worded that it can be given a certain or definite legal

meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker*, 650 S.W.2d at 393. However, when the language in the contract is "susceptible to two or more reasonable interpretations" an ambiguity exists. *Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). Only when an ambiguity exists may the court consider parol evidence to determine the parties' true intent. *Nat'l Union Fire Ins.*, 907 S.W.2d at 520.

> An ambiguity in a contract can be either "patent" or "latent." A patent ambiguity is evident on the face of the contract while a latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. If a latent ambiguity arises, parol evidence is admissible for ascertaining the true intentions of the parties as expressed in the agreement. The classic example of a latent ambiguity cited by a variety of authorities is a contract that calls for goods to be delivered to the "green house on Pecan Street" when there are, in fact, two or more green houses on Pecan Street.

*Am. Tobacco Co.*, 463 F.3d at 409 (internal citations and quotations omitted).

## III.

In the instant case, the district court in essence held that a latent ambiguity existed as to what obligations Tracking Systems assumed under the Settlement Agreement. Specifically, the court found that when applied to Tracking Systems' affiliates the agreement could be read to either (1) obligate Tracking Systems to control its affiliates or (2) provide a defense in the event that an affiliate sued Xtria.

The pertinent langauge is as follows:

> 1.3   Tracking Systems, Inc.: The term "TSI" means the Nevada Corporation, . . . its past, present and future affiliates and their predecessors and successors . . . and any companies, affiliates,

corporations, entities or associations that it does or may hereafter own, control, operate, manage or direct.

3.1  Release by TSI:

3.1.1 TSI does hereby release, remise, covenant not to sue and forever discharge: (a) Xtria . . . as follows: from and against all manner of action . . . relating to or arising from (i) the TSI-Xtria Agreement, and/or (ii) any oral or other written agreement between TSI and Xtria entered into prior to the Effective Date.

Having reviewed the Settlement Agreement as a whole, we believe that the Settlement Agreement is not latently ambiguous. Tracking Systems and Xtria are the only parties to the agreement. Under the agreement, Xtria agreed, among other things, to pay Tracking Systems in exchange for Tracking Systems' assurance that "TSI" would release and covenant not to sue Xtria. Tracking Systems made an unqualified, unconditional promise that its affiliates would release Xtria and not sue relating to any previous agreement made between Xtria and Tracking Systems' affiliates. Although the agreement is silent as to how Tracking Systems  might fulfill its commitment (e.g. control its affiliates) or how a breach of the agreement may be remedied (e.g. an affirmative defense may be raised in response to an affiliate's suit, or indemnification by Tracking Systems), the agreement is not ambiguous as a result of the silence. Imprecision is not tantamount to ambiguity. *See Landry's Seafood Rests., Inc. v. Waterfront Cafe, Inc.*, 49 S.W.3d 544, 549 (Tex. App.—Austin 2001, pet. dism'd). Whether the parties intended a certain course of performance or remedy for breach is irrelevant because the promise by Tracking Systems can be fulfilled without further clarification. Accordingly, the agreement is not latently ambiguous. *See Ludwig v. Encore Med., L.P.*, 191 S.W.3d 285, 290 (Tex. App.—Austin 2006, pet. denied) (a latent ambiguity exists "when the contract appears to convey a

sensible meaning on its face, but it cannot be carried out without further clarification").

Tracking Systems urges us to hold that either Tracking Systems did not assume an obligation under the Settlement Agreement to control its affiliates or the agreement is ambiguous as to whether Tracking Systems assumed such an obligation. To support its argument, Tracking Systems points to the lack of an explicit provision obligating Tracking Systems to control its affiliates or any provision indicating that Tracking Systems was acting on behalf of its affiliates. Tracking Systems further argues that it "would not make sense" that Tracking Systems would obligate itself to control affiliates whose activities it could not direct.

Tracking Systems' arguments are unavailing. We do not hold that the Settlement Agreement explicitly obligated Tracking Systems to control its affiliates. Rather, we conclude that Tracking Systems promised that its affiliates would not sue Xtria. One who promises to "produce a result for which it is necessary to obtain the co-operation of third persons" generally assumes the risk that the third party may not comply. *Toyo Cotton Co. v. Cotton Concentration Co.*, 461 S.W.2d 116, 118 (Tex. 1971) (quoting 6 CORBIN ON CONTRACTS § 1340 (1962)). Although it may be unwise to covenant on behalf of an entity one cannot actually control, an agreement should be enforced as written, "without regard to whether [the parties] contracted wisely." *CMS Partners, Ltd. v. Plumrose USA, Inc.*, 101 S.W.3d 730, 733 (Tex. App.—Texarkana 2003, no pet.).

IV.

For the reasons set forth above, we reverse the district court's determination of ambiguity and remand to the district court for further proceedings on the issues of breach and damages.

REVERSED AND REMANDED.